UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNAUD CAMMAS,<br>Plaintiff,<br>v.<br>YMCA OF EAST BAY, et al.,<br>Defendants. | Case No. 25-cv-10295-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 39 |

In 2021, Arnaud Cammas, who represents himself in this action, moved into a housing facility owned and operated by the YMCA. Allegedly, the conditions were horrendous: bodily discharge in the common areas; corpses festering for weeks before removal; emergency services constantly in and out; violence, break-ins, and verbal threats by the tenants themselves; and an increasingly dwindling staff servicing increasingly vulnerable residents. All of this culminated in 2022 when the executive director of the facility allegedly assaulted Cammas, leaving him suffering from medical and psychological conditions. After Cammas sought relief in state court in October 2022, the YMCA allegedly sought to evict him in January and April 2023. He subsequently commenced this federal action in November 2025 against the YMCA and several of its employees. (*See* First Amended Complaint (the "FAC") at Dkt. No. 25.) Defendants now move to dismiss. For the reasons set forth below, the motion is **GRANTED WITH LEAVE TO AMEND**.

## I. BACKGROUND[1]

Cammas "is a foreign-born Hispanic individual." (*See id.* at 5 ¶ 1.)[2] From approximately February 2021 to at least April 2023, he lived in a housing facility operated by the YMCA. (*See id.* at 5 ¶¶ 1-2, 22 ¶ 13.) He moved into the facility "based on marketing representations that the facility was student housing with 24-hour security and daily cleaning services." (*See id.* at 5 ¶ 1.) Allegedly, however, the conditions were extremely dangerous and unsanitary. (*See id.* at 3 ¶ 3, 9 ¶ 4, 10 ¶ 9, 11 ¶ 17, 12 ¶¶ 18, 21, 40 ¶ 3.) On several occasions, Hispanic tenants, including Cammas, reported assaults, threats, and xenophobic conduct, which the YMCA ignored. (*See id.* at 18-21 ¶¶ 1-10, 31 ¶ 4.)

Cammas consequently changed the lock to his unit in January 2022. (*See id.* at 22-23 ¶ 82A.) Apparently motivated by the lock change, on February 4, 2022, Lance Goree, the executive director of the facility, assaulted Cammas. (*See id.* at 7 ¶ 4, 13-14 ¶¶ 1-3, 22-23 ¶ 82A.) "[A]s a direct result of [this] assault," Cammas "suffered continuous post-traumatic stress disorder, chronic respiratory distress, difficulty concentrating, and executive-function impairment." (*Id.* at 49 ¶ 1.)

Cammas subsequently retained counsel and commenced proceedings in state court on October 19, 2022. (*See id.* at 21 ¶ 1, 29 ¶ 2.) Defendants then "engaged in a systematic retaliatory campaign designed to force [Cammas] from the facility and punish him for exercising his legal rights": the YMCA filed two "workplace-violence petition[s]" against Cammas in March and August 2022; the Berkeley Police Department "recommended that YMCA supervisors pursue eviction-focused responses against" Cammas in July 2022; Rose Acosta, a YMCA employee working at the housing facility, coordinated with the Berkeley Police Department to file two false police reports "that listed [Cammas] as a suspect" in July and October 2022; the YMCA served two "cease notice[s]" on Cammas in August and November

---

[1] The allegations of the FAC are accepted as true for purposes of resolving the motion. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022).

[2] All citations to page numbers in filings on the docket refer to ECF page numbers.

2022; and the YMCA commenced two unlawful detainer actions against Cammas in January and April 2023. (*See id.* at 7 ¶ 5, 21-22 ¶¶ 1-13.) The YMCA also allegedly lied in its May 2023 discovery responses in the state court proceedings, falsely representing that certain records did not exist. (*See id.* at 24-25 ¶¶ 1(a)(1)-(2).)

Cammas now brings this federal action to recover for the alleged housing fraud, assault, and retaliation that he experienced.

## II. LEGAL STANDARD

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Failure to satisfy this requirement may result in dismissal. *See id*. 12(b)(6). To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim

> has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Boquist*, 32 F.4th at 773 (citation omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice. *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881, 886-87 (9th Cir. 2020) (citation omitted). However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

*Pro se* pleadings are construed "liberally" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "[T]hose pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

## III. DISCUSSION

Cammas brings 13 claims in the FAC.[3] As discussed below, five of the six federal law claims are time-barred, and the sixth is insufficiently pled. In the absence of any federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining claims.[4]

### A. Federal Law Claims

#### 1. Time-Barred Claims

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint. [A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citations and quotation marks omitted). As currently pled, at least five of Cammas's claims are time-barred on the face of the FAC.

##### a. Counts 1 and 2: The Fair Housing Act (the "FHA")

A two-year statute of limitations governs claims arising under the FHA. *See Garcia v. Brockway*, 526 F.3d 456, 461 (9th Cir. 2008). This limitations period begins to run upon "the occurrence or the termination of an alleged discriminatory housing practice." *See id.* at 464

---

[3] Cammas originally asserted 14 claims in the FAC. He later voluntarily dismissed his conversion claim. (*See* Dkt. No. 47.)

[4] Cammas's request to file a sur-reply is **DENIED** because the additional argument he wants to provide concerns either immaterial factual matters, points raised in Defendants' opening brief that he could have addressed in his opposition brief, or arguments raised in Defendants' reply brief that responded to points raised in the opposition brief. (*See* Dkt. No. 48.)

(citation omitted). Cammas bases his two FHA claims on Defendants' alleged racial discrimination and their retaliation against him for complaining about Goree's assault and pursuing legal action against them. (*See* FAC at 27-29.) The latest event underlying these claims is the commencement of the second unlawful detainer action in April 2023. (*See id.* at 22 ¶ 13.) Two years later, April 2025, predates the November 2025 filing of the original complaint. Accordingly, the two FHA claims are time-barred.

The continuing violations doctrine does not require a different result. "[W]here a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period, running from] the last asserted occurrence of that practice." *Garcia*, 526 F.3d at 461-62 (citation omitted). Cammas points to two events which, if considered as continuing violations that independently trigger the statute of limitations, would result in his FHA claims being timely: (1) the May 2024 submission of a complaint by another tenant "concerning ongoing retaliation by YMCA management"; and (2) the December 2025 filing of a police report concerning assaults of other persons at the facility. (*See* Dkt. Nos. 37-3 at 21 ¶ 52 (proposed second amended complaint), 44 at 9; FAC at 27 ¶ 8.)[5] These events are not *continuing* violations. As alleged in Cammas's proposed second amended complaint, the May 2024 letter relies on Cammas's earlier assertions of discriminatory conduct and does not appear to describe any new conduct post-dating the April 2023 commencement of the second unlawful detainer action. (*See* Dkt. No. 37-3 at 21 ¶ 52.) The December 2025 police report, in turn, is not alleged to concern discrimination or retaliation.[6] (*See* FAC at 27 ¶ 8; Dkt. No. 37-3

[5] The FAC does not reference the May 2024 complaint, which appears for the first time in the proposed second amended complaint that Cammas sought leave to file after Defendants filed the motion. In denying leave to file the second amended complaint, the Court explained that it would "consider Plaintiff's proposed second amended complaint in determining whether granting further leave to amend would be futile." (*See* Dkt. No. 41 at 2.) Accordingly, this Order considers the May 2024 complaint in addressing Cammas's invocation of the continuing violations doctrine.

[6] The May 2024 letter and December 2025 police report do not appear to be in the record. (*See*

at 16 ¶ 36.)

**b. Count 3: 42 U.S.C. § 2000d**

"[C]laims brought under 42 U.S.C. § 2000d are governed by the same state [statute of] limitations period applicable to claims brought under § 1983." *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 712 (9th Cir. 1993). "For claims under Section 1983, []courts apply the forum state's statute of limitations for personal injury actions . . . . In California the statute of limitations for personal injury actions is two years." *Hart v. Cnty. of Mendocino*, No. 25-cv-04501-RFL, 2026 WL 986261, at *2 (N.D. Cal. Apr. 13, 2026) (citations omitted). Accordingly, a two-year statute of limitations governs the Section 2000d claim. *See, e.g.*, *Gutierrez v. City of Antioch*, No. 24-cv-01697-JSC, 2026 WL 1847868, at *5 (N.D. Cal. June 26, 2026). The limitations period begins to run "when the plaintiff knows or has reason to know of the actual injury." *See Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 952 (9th Cir. 2022).

Cammas bases his Section 2000d claim on discrimination and "adverse housing actions" he experienced. (*See* FAC at 30-31.) The latest example of alleged discrimination and adverse housing action is the commencement of the second unlawful detainer action in April 2023. (*See id.* at 22 ¶ 13.) Thus, at the latest, Cammas knew or had reason to know that he had been injured by April 2023, so the two-year limitations period had expired before the November 2025 filing of the original complaint. Accordingly, the Section 2000d claim is time-barred.

**c. Count 5: 42 U.S.C. § 1982**

As with the Section 2000d claim, California's two-year statute of limitations for personal injury actions governs the Section 1982 claim, and the limitations period begins to run when a plaintiff knows or has reason to know of the actual injury. *See, e.g.*, *Brown v. City Nat'l Bank*, No. 23-cv-03195-AMO, 2024 WL 201360, at *3 (N.D. Cal. Jan. 18, 2024). Cammas bases his Section 1982 claim on Defendants "subjecting [him] to conditions of tenancy materially worse than those experienced by American-born residents, including" Goree's assault, and Defendants

---

*also* Dkt. No. 46 at 6 n.1 (Defendants unable to locate letter and report).)

"deploying the full range of YMCA's housing-enforcement powers against [him] while permitting dangerous American-born residents to remain undisturbed." (*See* FAC at 32.) Construing the FAC in Cammas's favor, the latest alleged event conceivably involving his housing conditions or "housing-enforcement powers" is the commencement of the second unlawful detainer action in April 2023. (*See id.* at 22 ¶ 13.) That predates the November 2025 filing of the original complaint by more than two years. Accordingly, the Section 1982 claim is time-barred.

Cammas argues that the four-year "catch all" statute of limitations should apply to the Section 1982 claim. *See* 28 U.S.C. § 1658(a). A claim "is subject to the four-year statute of limitations if it arose under an Act of Congress enacted after" December 1, 1990. *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1006 (9th Cir. 2011). Congress didn't amend Section 1982 after 1990, so the four-year limitations period doesn't apply. *See McPherson v. McDonald's USA, LLC*, No. 23-cv-02913-SCS, 2026 WL 851255, at *20 (N.D Ill. Mar. 27, 2026).

**d. Count 12: 42 U.S.C. § 1985(3)**

As with the Sections 2000d and 1982 claims, California's two-year statute of limitations for personal injury actions governs the Section 1985(3) claim, and the limitations period begins to run when a plaintiff knows or has reason to know of the actual injury. *See, e.g.*, *Wade v. City of Antioch*, No. 25-cv-03200-CRB, 2026 WL 905013, at *3 (N.D. Cal. Apr. 2, 2026). Cammas bases his Section 1985(3) claim on an alleged conspiracy that resulted in the YMCA "targeting [his] housing." (*See* FAC at 41-43.) Targeting Cammas's housing appears to refer to the unlawful detainer actions. The YMCA commenced the second unlawful detainer action in April 2023. (*See id.* at 22 ¶ 13.) Thus, at the latest, Cammas knew or had reason to know that he had been injured by April 2023, which is more than two years before he filed the original complaint in this action. Accordingly, the Section 1985(3) claim is time-barred.

**e. Tolling and Accrual Theories**

Cammas argues that fraudulent concealment, the discovery rule, and equitable tolling save his claims from being time-barred.

**i. Fraudulent Concealment**

Fraudulent concealment permits a

> statute of limitations [to] be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence. [The plaintiff] carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that [the defendant] affirmatively misled it, and that [the plaintiff] had *neither actual nor constructive knowledge* of the facts giving rise to its claim despite its diligence in trying to uncover those facts. A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action.

*Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (emphasis in original) (citations and quotation marks omitted). Cammas argues that the YMCA fraudulently concealed his claims by allegedly misrepresenting the nonexistence of relevant records in its discovery responses in state court proceedings in May 2023. (*See* Dkt. No. 44 at 9-10.) But the bases for Cammas's claims—his own experiences during his time at the YMCA facility—were certainly known to him regardless of any allegedly false discovery responses subsequently provided to him. For the same reason, alleged "Pre-litigation concealment" of the state of the housing facility between 2019 and 2021 cannot toll the statute of limitations (*see* FAC at 47-48 ¶ 2(a)); by April 2023 at the latest, when the YMCA commenced the second unlawful detainer action, Cammas knew of the bases of his claims. As such, Cammas was not kept unaware of his claims through any alleged concealment by Defendants. Accordingly, fraudulent concealment does not apply. *See, e.g.*, *Flores v. Emerich & Fike*, No. 05-cv-00291-AWI, 2008 WL 2489900, at *22 (E.D. Cal. June 18, 2008).

**ii. Discovery Rule**

"The discovery rule serves to extend the time from which the limitations period starts to run until the plaintiff knows both the existence and the cause of his injury." *Garcia*, 526 F.3d at 465 (citation and quotation marks omitted) (FHA); *see also Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1048-1051 (9th Cir. 2008) (describing this rule similarly in context of federal civil rights statutes). Cammas argues that the rule applies here to delay accrual of his claims until

January 2025 when he obtained discovery in the state court proceedings. (*See* Dkt. No. 44 at 11.) But as explained above, he knew of his injuries and their causes by no later than April 2023. The discovery rule, therefore, cannot push accrual past that date, and an accrual date of April 2023 renders his claims time-barred.

**iii. Equitable Tolling**

Beginning with the FHA claim, "[e]quitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Garcia*, 526 F.3d at 465 (citation omitted). In invoking the rule, Cammas explains that he "has been treated . . . for post-concussion syndrome, PTSD, dysphonia, and executive-function impairment, all tied directly to the February 4, 2022 assault" by Goree. (*See* Dkt. No. 44 at 11-12.) While those conditions are undeniably significant ones, the FAC does not allege how they prevented Cammas from obtaining vital information bearing on the existence of his claims. *Cf. Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (providing evidence that psychiatric disabilities rendered the plaintiff unable to "read, open mail, or function in society"). Moreover, even if that issue could be overcome, the sole factual allegations about the length of Cammas's disabilities describe him as being unable to participate fairly in the legal process for a period of about five months (from September 2024 through January or February 2025). (*See* FAC at 49-50 ¶¶ 1-4.) That would still be insufficient to render his claims timely.

As for the federal civil rights statutory claims, California's tolling rules apply. *See TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999). "Broadly speaking, the doctrine applies [w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 100 (2008) (citation and quotation marks omitted). "[E]quitable tolling today applies when three elements are present: [(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff." *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 724 (2020) (citation and quotation marks omitted). Cammas invokes the doctrine in his briefing but does not explain how any of these elements are met.

At the very least, under the allegations of the FAC, the third element is not satisfied. Cammas alleges that he obtained certain important documents via subpoena in 2024, and his medical impairments prevented him from investigating and managing the litigation until approximately January or February 2025. (*See* FAC at 48-50 §§ C-D.) That leaves an approximately 9-month gap before his commencement of this action in November 2025. The third element, however, requires "reasonable promptness." *See Jones v. Schneider Elec. USA, Inc.*, No. 24-cv-07347-JSC, 2026 WL 1865743, at *3 (N.D. Cal. June 29, 2026) (citation omitted). An unexplained 9-month gap demonstrates a lack of reasonable promptness. *See, e.g.*, *Musaelian v. Sonoma Cnty. Sheriff's Dep't*, No. 07-cv-00806-SI, 2007 WL 1864342, at *3 (N.D. Cal. June 28, 2007) (8-month gap too long).

In sum, Cammas's claims under the FHA and 42 U.S.C. Sections 2000d, 1982, and 1985(3) are time-barred.

**2. Count 4: 42 U.S.C. § 1981**

To state a Section 1981 claim, a "plaintiff must allege that (1) he is a member of a racial group, (2) some contractual right with [the] defendant was impaired, (3) [the] defendant intentionally discriminated against him based on race, and (4) his race was a but-for cause of the contractual impairment." *See Ray v. Am. Airlines, Inc.*, 755 F. Supp. 3d 1277, 1279 (C.D. Cal. 2024) (citations omitted). Cammas bases this claim on: (1) Goree's assault; (2) attempting to evict him "while not pursuing comparable action against American-born residents who engaged in the same or worse conduct"; (3) "failing to take any protective action against xenophobic harassment directed at [Cammas] and other foreign-born Hispanic residents"; and (4) "retaliating against [Cammas] for exercising legal rights to vindicate his contractual interests." (*See* FAC at 31-32.)

The FAC does not sufficiently allege that Cammas's race was a but-for cause of this conduct. For some of these actions, the FAC itself supplies obvious alternative explanations: Goree confronted and assaulted Cammas because he had changed the lock on his unit, and the YMCA sought to evict Cammas to "punish him for exercising his legal rights." (*See id.* at 13-14

¶¶ 1-3, 21-23 ¶¶ 1-13, 82A); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("[P]laintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true . . . ." (citations and quotation marks omitted)). As for the failure to protect Cammas from harassment, the FAC offers no non-conclusory allegations sufficient to draw a plausible inference that such failure was caused by Cammas's race. For example, the FAC does not allege whether other types of harassing or offensive conduct were handled differently when individuals of other races were targeted. Similarly, it is not sufficient for the FAC to allege that perpetrators of other "objectively worse conduct than anything alleged against" Cammas, all of whom were "American-born residents," were not "targeted with the full range of YMCA's housing-enforcement mechanisms." (*See* FAC at 21 ¶ 10.) The FAC does not provide any information indicating that those other individuals were otherwise similarly situated to him, so there is not enough to plausibly infer that the YMCA treated Cammas differently *because of* race. Thus, the FAC does not state a Section 1981 claim.[7]

**B. State Law Claims**

The FAC invokes federal question jurisdiction and supplemental jurisdiction as the sources of subject matter jurisdiction in this action. (*See id.* at 4 ¶¶ 1-2.) Because all of Cammas's federal law claims will be dismissed, this Court cannot exercise federal question jurisdiction. And in light of those dismissals, it also declines to exercise supplemental jurisdiction over the remaining claims, all of which arise under state law. *See* 28 U.S.C. § 1367(c)(3); *see, e.g.*, *Picazo v. Aptos Berry Farms, Inc.*, No. 23-cv-02735-SVK, 2024 WL 1057471, at *6 (N.D. Cal. Mar. 11, 2024).[8]

---

[7] This Order does not address Defendants' argument that the Section 1981 claim is time-barred.

[8] Although Defendants do not raise the issue of jurisdiction in their motion, "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**. Dismissal is with **LEAVE TO AMEND** because Cammas may be able to provide allegations in an amended pleading addressing the deficiencies identified in this Order concerning the continuing violations doctrine, equitable tolling, or the failure to state a Section 1981 claim. While the proposed second amended complaint does not appear to include sufficiently corrective allegations Cammas did not have the benefit of this Order's analysis in preparing that proposed pleading. (*See also* Note 5, *supra*.)

If Cammas wishes to file an amended complaint correcting the deficiencies identified in this Order, he shall do so by **August 20, 2026**. The amended complaint may not add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15. If Cammas does not file an amended complaint by the deadline, the federal law claims will be dismissed with prejudice, and the state law claims will be dismissed without prejudice to being brought in state court.

**IT IS SO ORDERED.**

Dated: July 30, 2026

RITA F. LIN
United States District Judge

(2006) (citation omitted).