# EXHIBIT A

Email chain, City of Berkeley, June 25-26, 2014

*Claudette Biemeret to Ann-Marie Hogan and reply chain including*
*Lance Goree to John Caner, Christine Daniel, Michael Meehan*
*Produced by the City of Berkeley, PRA Request No. 24-34*

**Date : 6/25/2014 10:20:29 AM**
**From : "John Caner" jcaner@downtownberkeley.com**
**To : "Hogan, Ann-Marie" AHogan@ci.berkeley.ca.us, "Daniel, Christine" CDaniel@ci.berkeley.ca.us**
**Cc : "Meehan, Michael" MMeehan@ci.berkeley.ca.us, "Biemeret, Claudette" CBiemeret@ci.berkeley.ca.us, "Lance Gorée" lgoree@downtownberkeley.com**
**Subject : Re: Incident on Center Street**

Anne-Marrie:

Thanks for making me aware of this situation. I have spoken to Lance Gorée, our Operation Manager (the man in the brown shirt) and there is quite a back story before Claudette happened upon this situation. Lance is writing up explanation that we will get to you shortly. We appreciate additional feedback once you have been fully apprised of the situation.

Thanks, John

John Caner, CEO
Downtown Berkeley Association
2230 Shattuck Ave., Suite C
Berkeley, CA 94704
510.549.2230 x12
jcaner@downtownberkeley.com
www.downtownberkeley.com

---

**From:** Ann-Marie Hogan <AHogan@ci.berkeley.ca.us>
**Date:** Wednesday, June 25, 2014 9:36 AM
**To:** Christine Daniel <cdaniel@ci.berkeley.ca.us>
**Cc:** John Caner <jcaner@downtownberkeley.com>, Michael Meehan <mmeehan@ci.berkeley.ca.us>, "Biemeret, Claudette" <CBiemeret@ci.berkeley.ca.us>
**Subject:** RE: Incident on Center Street

Thanks Christine. I'm back in the office now and just talked to Claudette who said that the incident happened at about 7:15 and that several additional Ambassadors showed up but all appeared to be following the lead of the brown-uniformed individual (Claudette saw one ambassador take the pillow out from under the individual's head and throw it in the transport vehicle, etc. I stopped by Center Street garage and noted that security there wears dark blue, not brown, and the security guard confirmed this and said that they don't come on till 8. Claudette if very willing to talk to someone about what happened.

Ann-Marie Hogan, City Auditor
510-981-6750

---

**From:** Hogan, Ann-Marie
**Sent:** Wednesday, June 25, 2014 8:51 AM
**To:** Daniel, Christine
**Subject:** Fw: Incident on Center Street

**From**: Biemeret, Claudette
**Sent**: Wednesday, June 25, 2014 08:15 AM
**To**: Hogan, Ann-Marie
**Subject**: Incident on Center Street

Hi, Ann-Marie.

This morning someone from the Downtown Berkeley Association (the people in the green jackets and shirts) and someone in a brown uniform – likely private security – were trying to remove a homeless man from the alcove in front of the private parking garage on Center Street. I saw the uniformed person grabbing the homeless man by the neck and I'm certain he shouted at the homeless man, "I will choke you." I called BPD and reported it but I don't know whether someone was able to arrive in time to help. While I'm sure the homeless person was being difficult, the situation clearly required someone with experience in dealing with the mentally ill. I do not think that the two people I saw handling the situation were trained to do so. The incident was clearly distressing to everyone. Many people on Center Street were watching and disturbed by what they witnessed. Is there someone with Downtown Berkeley that you can contact to report this incident and find out who the person was in the brown uniform?

Thanks.
--
Claudette Biemeret
Interim Audit Manager
City of Berkeley
2180 Milvia St., 3rd Floor
Berkeley, CA 94704
510-981-6759

**Date : 6/26/2014 9:02:35 AM**
**From : "Lance" lgoree@downtownberkeley.com**
**To : "Polizziani, Stephanie" SPolizziani@ci.berkeley.ca.us, "Scott, Christopher" CScott@ci.berkeley.ca.us, "Lucero, Jamie" JLucero@ci.berkeley.ca.us**
**Subject : Incident on Center Street**

Just an FYI

> ---------- Original Message ----------
> From: Lance <lgoree@downtownberkeley.com>
> To: John Caner <jcaner@downtownberkeley.com>
> Cc: AHogan@ci.berkeley.ca.us, "Daniel, Christine" <cdaniel@ci.berkeley.ca.us>, "Meehan, Michael" <mmeehan@ci.berkeley.ca.us>, CBiemeret@ci.berkeley.ca.us
> Date: June 25, 2014 at 10:40 AM
> Subject: Re: FW: Incident on Center Street
>
> To All,
>
> I am fully aware of the incident, because I was directly involved. I was the person in brown. I understand and appreciate Ms. Biemeret's concern regarding the incident. The reason that I was out there was due to this individual's aggressive behavior today and on previous days. Today he threatened, and has previously threatened, ambassadors. I spoke with him yesterday about his aggressive behavior and he has been consistently offered social service help.
>
> This incident escalated when 'Romanian', the name he has chosen to go by, decided that he wanted to physically assault/challenge me. Unfortunately, Ms. Biemeret's account is accurate, but a bit incomplete because of a snapshot in time. She saw the response to Romanian's aggressiveness and Romanian was not in a 'winning' situation. I made sure that Romanian was not physically injured in any way, although I was angry enough to do so. Romanian was told MANY times not to put his hands on anyone, including me.
>
> As I said, this is not our first encounter with 'Romanian' and unfortunately it probably won't be the last. I don't allow my ambassadors to be anything but nice when addressing the Street Population and to do their best to avoid ANY conflict or confrontations. As I have discussed with many officials in the past few weeks, we are seeing a growing aggressiveness and comfort by code breaking street population on the streets that has worried us. Fortunately, this 'physical' incident is the first in many many months.
>
> I will gladly discuss the incident in more detail, if needed. The ambassadors are well trained and do their job well, the minimal 'physical' confrontations illustrates that fact.

Lance Gorée
Operations Manager
Downtown Berkeley Association
510-549-2230, x13

On June 25, 2014 at 9:46 AM John Caner <jcaner@downtownberkeley.com> wrote:

Let's discuss.

John Caner, CEO
Downtown Berkeley Association
2230 Shattuck Ave., Suite C
Berkeley, CA 94704
510.549.2230 x12
jcaner@downtownberkeley.com
www.downtownberkeley.com

---

**From:** Ann-Marie Hogan < AHogan@ci.berkeley.ca.us>
**Date:** Wednesday, June 25, 2014 9:36 AM
**To:** Christine Daniel < cdaniel@ci.berkeley.ca.us>
**Cc:** John Caner < jcaner@downtownberkeley.com>, Michael Meehan < mmeehan@ci.berkeley.ca.us>, "Biemeret, Claudette" < CBiemeret@ci.berkeley.ca.us>
**Subject:** RE: Incident on Center Street

Thanks Christine. I'm back in the office now and just talked to Claudette who said that the incident happened at about 7:15 and that several additional Ambassadors showed up but all appeared to be following the lead of the brown-uniformed individual (Claudette saw one ambassador take the pillow out from under the individual's head and throw it in the transport vehicle, etc. I stopped by Center Street garage and noted that security there wears dark blue, not brown, and the security guard confirmed this and said that they don't come on till 8. Claudette if very willing to talk to someone about what happened.

Ann-Marie Hogan, City Auditor
510-981-6750

**From:** Hogan, Ann-Marie
**Sent:** Wednesday, June 25, 2014 8:51 AM
**To:** Daniel, Christine
**Subject:** Fw: Incident on Center Street

**From**: Biemeret, Claudette
**Sent**: Wednesday, June 25, 2014 08:15 AM
**To**: Hogan, Ann-Marie
**Subject**: Incident on Center Street

Hi, Ann-Marie.

This morning someone from the Downtown Berkeley Association (the people in the green jackets and shirts) and someone in a brown uniform – likely private security – were trying to remove a homeless man from the alcove in front of the private parking garage on Center Street. I saw the uniformed person grabbing the homeless man by the neck and I'm certain he shouted at the homeless man, "I will choke you." I called BPD and reported it but I don't know whether someone was able to arrive in time to help. While I'm sure the homeless person was being difficult, the situation clearly required someone with experience in dealing with the mentally ill. I do not think that the two people I saw handling the situation were trained to do so. The incident was clearly distressing to everyone. Many people on Center Street were watching and disturbed by what they witnessed. Is there someone with Downtown Berkeley that you can contact to report this incident and find out who the person was in the brown uniform?

Thanks.
--
Claudette Biemeret
Interim Audit Manager
City of Berkeley
2180 Milvia St., 3rd Floor
Berkeley, CA 94704
510-981-6759

Lance Gorée
Operations Manager
Downtown Berkeley Association
510-549-2230, x13

# EXHIBIT B

Declaration of Lance Goree, executed March 1, 2022

*Filed in Alameda County Superior Court Case No. 22CV008690*

# ATTACHMENT 4B

## DECLARATION OF LANCE GOREE IN SUPPORT OF WORKPLACE RESTRAINING ORDER

I, Lance Goree, declare as follows:

1. I am employed by YMCA of the East Bay as an Executive Director, and my workplace is located at 2001 Allston Way, Berkeley, California 94704. The following statements are within my personal knowledge and, if sworn as a witness, I can testify competently thereto.
2. Arnaud Louis Raul Cammas resides in Unit 307 of 2001 Allston Way, Berkeley, California 94704.
3. On or about February 4, 2022, at approximately 1:50 pm, I was working in my office speaking to Rose Acosta, YMCA of the East Bay Custodial Lead, on the phone when I heard someone say what I thought was "Go fuck yourself." I asked Rose Acosta who I had overheard, and she told me it was Mr. Cammas.
4. I left my office and went upstairs to the dining room where I found Mr. Cammas and his girlfriend sitting at a table with him. I asked Mr. Cammas whether I could speak to him privately about a couple of issues. I asked him multiple times before he responded in any manner, finally replying to ask what I wanted to discuss. I told him I wanted to discuss his behavior towards Ms. Acosta and whether he changed a lock on a YMCA door. Mr. Cammas stood up to confront me. I noticed Mr. Cammas's girlfriend had started to film this confrontation.
5. After 4-5 minutes of discussion, Mr. Cammas's girlfriend stood up and walked behind me. Mr. Cammas then pushed me and punched me in the side of the head.
6. I reoriented myself quickly after the punch and was able to subdue Mr. Cammas. He was kicking and flailing, so two other residents assisted in my efforts. Antonio Acosta, YMCA of the East Bay maintenance employee attempted to help and Ms. Acosta also

attempted to help but Mr. Cammas kicked Ms. Acosta, which sent her falling backwards.

7. I was able to keep Mr. Cammas subdued until the Berkeley Police arrived. They then took Mr. Cammas into custody.

8. This incident was captured by security cameras, the footage of which is attached hereto as **Exhibit 1.**

9. Based on this event and Mr. Cammas's aggressive demeanor, I remain in fear for my safety and believe I am at risk for further physical violence should Mr. Cammas not be prohibited from coming near me.

10. YMCA employees Antonia Acosta, Tammy Barberio, and Maria Luisa Perez-Leon are also included in this request as I believe their safety is also jeopardized as a result of their working relationship with me.

I declare under penalty of perjury under the law of California that the foregoing is true and correct.

This declaration was executed on March 1, 2022, in Berkeley, California.

Lance Goree

# EXHIBIT 1

## THUMB DRIVE ATTACHED WITH FILED COPY.

## ATTACHMENT C

**DECLARATION OF ROSE ACOSTA IN SUPPORT OF WORKPLACE RESTRAINING ORDER**

I, Rose Acosta, declare as follows:

1. I am employed by YMCA of the East Bay as a Custodial Lead, and my workplace is located at 2001 Allston Way, Berkeley, California 94704. The following statements are within my personal knowledge and, if sworn as a witness, I can testify competently thereto.
2. Arnaud Louis Raul Cammas resides in Unit 307 of 2001 Allston Way, Berkeley, California 94704.
3. On or about February 4, 2022, at approximately 1:50 pm, I was on the phone with Lance Goree when Mr. Cammas approached my desk, gave me the middle finger and said, "Go fuck yourself." Mr. Goree overheard what was said and asked me who had said it. I informed Mr. Goree that it was Mr. Cammas he had overheard. Mr. Goree told me he was coming upstairs from his office and hung up the phone.
4. Mr. Goree then came upstairs to the dining room to confront Mr. Cammas. Mr. Goree asked Mr. Cammas multiple times if they could speak privately but Mr. Cammas did not answer him. Mr. Goree then told Mr. Cammas they could have their conversation in the dining room since Mr. Cammas was refusing to have their discussion in private. Mr. Goree asked Mr. Cammas about changing the lock on the door to Mr. Cammas' unit multiple times. Mr. Cammas did not reply, stood up and made derogatory remarks about Mr. Goree and his family. Mr. Cammas then shoved Mr. Goree and punched him in the head.
5. Mr. Goree grabbed Mr. Cammas to prevent him from attacking anyone else. Mr. Cammas was kicking and flailing on the ground in an attempt to escape from Mr. Goree. I tried to assist Mr. Goree when Mr. Cammas kicked me, causing me to fall backwards to the ground.

6. Mr. Cammas was subdued until the Berkeley Police arrived. They then took Mr. Cammas into custody.
7. Based on this event and Mr. Cammas' aggressive demeanor, I remain in fear for my safety and the safety of others, and believe we are all at risk for further physical violence should Mr. Cammas not be prohibited from coming near us.

I declare under penalty of perjury under the law of California that the foregoing is true and correct.

This declaration was executed on March 2, 2022, in Berkeley, California.

Rose Acosta

# EXHIBIT 1

To Petition

MP4 VIDEO THAT WILL BE LODGE WHEN CASE AND DEPT NUMBER IS ASSIGNED

**EXHIBIT 1**

# EXHIBIT C

Letter from Lance Goree and Rose Acosta to Plaintiff, January 24, 2022

*Rent arrears and threat of eviction*










January 24, 2022

FROM: Lance Gorée, Executive Director, YMCA Residence
Rose Acosta, Lead Union Representative YMCA Residence

TO: Arnaud Cammas, Room 307

RE: **Rental Status/Payment Invoice For:**
**2001 Allston Way, Room 307**

Going forward, the YMCA Residence will inform and address financial imprudence and irresponsibility to individual residents. The information below details Effective Date, Current Monthly Payment, Start Date, Total Amount Accrued, Total Amount of Payments and Amount in Arrears (Owed).

| | | |
|---|---|---|
| Name | | **Arnaud Cammas** |
| Effective Date: | | January 31, 2022 |
| Current Monthly Payment Amount: | | $1,050.00 |
| Beginning/Move In Date | | February 16, 2021 |
| Total Amount Accrued: | | $12,600.00 |
| Total Amount of Payments: | | $4,183.34 |
| Rent Amount in Arrears (Due) as of Effective Date: | | **$8,416.66** |

Pursuant to Berkeley Municipal Code Section 13.76.130 – Good Cause Required For Eviction shall exist under the following grounds:

Tenant has failed to pay rent to which the landlord/property owner is legally entitled pursuant to the lease or rental agreement and under the provisions of state or local law.

The YMCA of the East Bay reserves its rights to serve a 3-Day or longer notice to Pay The Rent or Quit (vacate property) to **Mr. Arnaud Cammas currently residing at YMCA of the East Bay property at 2001 Allston Way, Room 307**. Subsequently, the YMCA of the East Bay reserves its rights to file an unlawful detainer lawsuit with the superior court.

# EXHIBIT D

Reporter's Transcript, August 2, 2022

*Alameda County Superior Court Case No. 22CV008690*

*Hon. Jocelyn Jones presiding*

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

BEFORE THE HONORABLE JOCELYN JONES, JUDGE PRESIDING

DEPARTMENT NUMBER 105

---oOo---

CERTIFIED TRANSCRIPT

| | |
|---|---|
| YMCA OF THE EAST BAY,<br>Petitioner,<br>vs.<br>ARNAUD CAMMAS,<br>Respondent. | No. 22-CV-008690<br><br>HEARING |

Reporter's Transcript of Proceedings

Tuesday, August 2, 2022

APPEARANCES OF COUNSEL:

FOR THE PETITIONER:

YMCA
Kelley Maltais
Emma Lee McCarthy
Attorney at Law

FOR THE RESPONDENT:

Arnaud Cammas
In Propria Persona

Reported By: Alisa A. James, CSR No. 10901

AUGUST 2, 2022 AM SESSION

P R O C E E D I N G S

--oOo--

THE COURT: Calling line Number 3, 22CV008690, YMCA of East Bay versus Arnaud Cammas.

MR. CAMMAS: Good morning, your Honor.

THE COURT: Come forward. Come on down. Respondent, to the left, please.

Mr. Cammas, you have to be able to follow court rules. Does that make sense?

MR. CAMMAS: Yes.

THE COURT: All right, all right. Everyone stand. We'll get you sworn.

Can I please ask the parties and their witness to raise their right hands. Thank you.

Each of you solemnly state under penalty of perjury testimony you give matters before this court shall be the court whole truth nothing but the truth if so say, I do.

MS. MALTAIS: I do.

MR. CAMMAS: I do.

THE COURT: All right.

THE CLERK: And starting with the -- everyone can have a seat.

Starting with the witness for Petitioner, can you please state and slowly spell your name.

MS. MALTAIS: Yes. Kelley Maltais, K-e-l-l-e-y, Maltais, M-a-l-t-a-i-s.

THE CLERK: Thank you.

And the Respondent, can you please state and spell your name?

MR. CAMMAS: Arnaud Cammas, A-r-n-a-u-d, C-a-m-m-a-s.

THE COURT: Spell your first name again.

MR. CAMMAS: A-r-n-a-u-d.

THE COURT: It's misspelled in the petition.

And the protected party is Lance Glory?

MS. McCARTHY: That's correct, your Honor.

THE COURT: Is Lance Glory here?

MS. McCARTHY: No, your Honor.

THE COURT: Why not?

MS. McCARTHY: Mr. Glory no longer works for YMCA East Bay. That's why we're seeking a dismissal of the TRO at this time.

THE COURT: Very good.

So do you have any objection?

And you're counsel?

MS. McCARTHY: I'm counsel, Emma Lee McCarthy.

THE COURT: And --

THE CLERK: And can you also just spell your name? I didn't have a chance to get it.

MS. McCARTHY: Yes. E-m-m-a L-e-e, M-c-C-a-r-t-h-y.

THE COURT: Okay. Thank you, Ms. McCarthy.

And your request is to dismiss the matter?

MS. McCARTHY: That's correct.

THE COURT: Mr. Cammas, is there any objection?

MR. CAMMAS: No.

THE COURT: The matter is dismissed without prejudice.

MS. McCARTHY: Thank you, your Honor.

(Proceedings concluded.)

## COURT REPORTER'S CERTIFICATE

State of California )
) ss.
County of Alameda )

I, Alisa A. James, hereby certify that I am a Certified Shorthand Reporter and that I recorded verbatim in shorthand the proceedings had Tuesday, August 2, 2022, in the matter of YMCA OF THE EAST BAY, Petitioner, versus ARNAUD CAMMAS, Respondent, Case Number 22-CV-008690, completely and correctly to the best of my ability; that I have caused said shorthand to be transcribed into typewriting and the foregoing pages, 1 to 5, constitute a complete and accurate transcript of said shorthand writing taken in the above-mentioned proceedings.

Dated at Oakland, California, this 20th day of AUGUST, 2024.

ALISA A. JAMES, CSR NO. 10901

---o0o---

# EXHIBIT E

Defendants' Separate Statement of Undisputed Material Facts, April 4, 2025

*Filed in support of Defendants' motion for summary judgment*

KAUFMAN DOLOWICH LLP
Katherine S. Catlos (SBN 184227)
Haruto Cheng (SBN 355203)
425 California Street, Suite 2100
San Francisco, California 94104
Telephone: (415) 926-7600
Facsimile: (415) 926-7601
Email: kcatlos@kaufmandolowich.com
haruto.cheng@kaufmandolowich.com

Attorneys for Plaintiff and Cross-Defendant
YOUNG MEN'S CHRISTIAN ASSOCIATION
OF THE EAST BAY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ALAMEDA**

| | |
|---|---|
| YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY, a California nonprofit public benefit corporation;<br><br>Plaintiff,<br><br>v.<br><br>ARNAUD LOUIS RAUL CAMMAS, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants.<br><br>ARNAUD LOUIS RAUL CAMMAS, an individual;<br><br>Cross-Complainant,<br><br>v.<br><br>YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY, a California nonprofit public benefit corporation; and ROES 1 through 25, inclusive,<br><br>Cross-Defendants. | Case No.: 23CV031079<br><br>Action Filed: April 13, 2023<br>Trial Date: August 1, 2025<br><br>*Case Assigned to Honorable Karin Schwartz in Dept. 20 for All Purposes*<br><br>**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF AND CROSS-DEFENDANT YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Hearing: August 6, 2025<br>Time: 3:00 p.m.<br>Dept.: 20<br>Judge: Honorable Karin Schwartz<br><br>**Reservation No.: 794674891568**<br><br>[Filed Concurrently with the Notice of Motion; Memorandum of Points and Authorities; Declaration of Kelley Maltais; Declaration of Katherine S. Catlos; Request for Judicial Notice; and [Proposed] Order] |

Pursuant to Code of Civil Procedure sections 437c(b)(3) and California Rules of Court rule 3.1350(d) and (h), Plaintiff Young Men's Christian Association of the East Bay (hereafter "Plaintiff" or "YMCA") submits this separate statement of undisputed material facts, together with references to supporting evidence, in support for its Motion for Summary Judgment or in the Alternative for Summary Adjudication (hereinafter the "Motion") against Defendant Arnaud Cammas (referred to herein as "Defendant").

The Declaration of Kelley Maltais (referred to as "**MALTAIS DECL**"), filed concurrently herewith, sets forth the following exhibits:

**EXHIBIT A**: The lease agreement entered between landlord Plaintiff YMCA of the East Bay, and tenant Defendant Arnaud Cammas. (referred to herein as "**LEASE AGREEMENT**")

**EXHIBIT B**: The communication between YMCA and Defendant, reflecting Defendant's move to Unit 307.

The Declaration of Katherine Catlos (referred to as "**CATLOS DECL**"), filed concurrently herewith, sets forth the following exhibits:

**EXHIBIT A**: YMCA's Request for Admissions, Set One propounded to Defendant.

**EXHIBIT B**: Pertinent pages of Defendant Arnaud Cammas' responses to Plaintiff YMCA of the East Bay's Request for Admissions, Set One (the "**RFA RESPONSES**")

**EXHIBIT C**: Pertinent pages of Defendant Arnaud Cammas' responses to Plaintiff YMCA of the East Bay's Form Interrogatories–Unlawful Detainer, Set One (the "**FI RESPONSES**")

ISSUE 1: THE YMCA IS ENTITLED TO JUDGMENT ON ITS FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT BECAUSE DEFENDANT FAILED TO PAY RENT.

| **Undisputed Material Facts** | **Opposing Party's Response and Evidence:** |
|---|---|
| 1. YMCA is the owner of the property located at 2001 Allston Way, Unit 319, | |

| | |
|---|---|
| Berkeley, California 94704 (the “Property”). Plaintiff Amended Complaint for Damages, Para. 6; **MALTAIS DECL** Para. 3. | |
| 2. YMCA and Defendant entered a Lease Agreement on February 18, 2021, for Defendant to rent Unit 319 located at the Property. **RFA RESPONSES** No. 4; Plaintiff Amended Complaint for Damages, Para. 6; **MALTAIS DECL** Para. 4; LEASE AGREEMENT | |
| 3. Defendant then moved to Unit 307 of the Property (the “Premises”) where he resided as a tenant, under the same terms of the Lease Agreement. **RFA RESPONSES** No. 3; YMCA Amended Complaint for Damages, Para. 8; **MALTAIS DECL** Para. 7. | |
| 4. Defendant was obligated under the Lease Agreement terms to pay YMCA a monthly rent of One Thousand Fifty Dollars ($1,050), payable in advance each month. **RFA RESPONSES** No. 5; **LEASE AGREEMENT**; **MALTAIS DECL** para. 10. | |
| 5. Defendant did not pay rent for June 2021, and February 2022 through July | |

| | |
|---|---|
| 2023. **FI RESPONSES** No. 71.4; **RFA RESPONSES** No. 6; **MALTAIS DECL** para. 11; | |
| 6. Defendant continued his possession of the Premises until he vacated the Premises July 31, 2023. **RFA RESPONSES** No. 24; YMCA Amended Complaint for Damages, Para. 28; **MALTAIS DECL** para. 12. | |
| 7. On October 13, 2023, YMCA filed an amended complaint for breach of contract and breach of implied duty of good faith and fair dealing causes of action to seek unpaid rent from Defendant. Request for Judicial Notice Exh. D; YMCA Amended Complaint for Damages. | |

ISSUE 2: THE YMCA IS ENTITLED TO JUDGMENT ON ITS SECOND CAUSE OF ACTION FOR BREACH OF COVENANANT OF GOOD FAITH AND FAIR DEALING BECAUSE DEFENDANT FAILED TO PAY RENT.

| **Undisputed Material Facts** | **Opposing Party's Response and Evidence:** |
|---|---|
| 1. YMCA is the owner of the property located at 2001 Allston Way, Unit 319, Berkeley, California 94704 (the "Property"). Plaintiff Amended | |

| | |
|---|---|
| Complaint for Damages, Para. 6; **MALTAIS DECL** Para. 3. | |
| 2. YMCA and Defendant entered a Lease Agreement on February 18, 2021, for Defendant to rent Unit 319 located at the Property. **RFA RESPONSES** No. 4; Plaintiff Amended Complaint for Damages, Para. 6; **MALTAIS DECL** Para. 4; LEASE AGREEMENT | |
| 3. Defendant then moved to Unit 307 of the Property (the "Premises") where he resided as a tenant, under the same terms of the Lease Agreement. **RFA RESPONSES** No. 3; YMCA Amended Complaint for Damages, Para. 8; **MALTAIS DECL** Para. 7. | |
| 4. Defendant was obligated under the Lease Agreement terms to pay YMCA a monthly rent of One Thousand Fifty Dollars ($1,050), payable in advance each month. **RFA RESPONSES** No. 5; **LEASE AGREEMENT**; **MALTAIS DECL** para. 10. | |
| 5. Defendant did not pay rent for June 2021, and February 2022 through July 2023. **FI RESPONSES** No. 71.4; **RFA RESPONSES** No. 6; **MALTAIS** | |

| | |
|---|---|
| **DECL** para. 11; | |
| 6. Defendant continued his possession of the Premises until he vacated the Premises July 31, 2023. **RFA RESPONSES** No. 24; YMCA Amended Complaint for Damages, Para. 28; **MALTAIS DECL** para. 12. | |
| 7. On October 13, 2023, YMCA filed an amended complaint for breach of contract and breach of implied duty of good faith and fair dealing causes of action to seek unpaid rent from Defendant. Request for Judicial Notice Exh. D; YMCA Amended Complaint for Damages. | |

ISSUE 3: THE YMCA IS ENTITLED TO JUDGMENT ON DEFENDANT'S FIRST CAUSE OF ACTION FOR RETALIATORY EVICTION BECAUSE DEFENDANT FAILED TO PAY RENT.

| **Undisputed Material Facts** | **Opposing Party's Response and Evidence:** |
|---|---|
| 1. YMCA is the owner of the property located at 2001 Allston Way, Unit 319, Berkeley, California 94704 (the "Property"). Plaintiff Amended Complaint for Damages, Para. 6; **MALTAIS DECL** Para. 3. | |
| 2. YMCA and Defendant entered a Lease | |

| | |
|---|---|
| Agreement on February 18, 2021, for Defendant to rent Unit 319 located at the Property. **RFA RESPONSES** No. 4; Plaintiff Amended Complaint for Damages, Para. 6; **MALTAIS DECL** Para. 4; LEASE AGREEMENT | |
| 3. Defendant then moved to Unit 307 of the Property (the "Premises") where he resided as a tenant, under the same terms of the Lease Agreement. **RFA RESPONSES** No. 3; YMCA Amended Complaint for Damages, Para. 8; **MALTAIS DECL** Para. 7. | |
| 4. Defendant was obligated under the Lease Agreement terms to pay YMCA a monthly rent of One Thousand Fifty Dollars ($1,050), payable in advance each month. **RFA RESPONSES** No. 5; **LEASE AGREEMENT**; **MALTAIS DECL** para. 10. | |
| 5. Defendant did not pay rent for June 2021, and February 2022 through July 2023. **FI RESPONSES** No. 71.4; **RFA RESPONSES** No. 6; **MALTAIS DECL** para. 11; | |
| 6. Defendant continued his possession of the Premises until he vacated the | |

| | |
|---|---|
| Premises July 31, 2023. **RFA RESPONSES** No. 24; YMCA Amended Complaint for Damages, Para. 28; **MALTAIS DECL** para. 12. | |
| 7. On October 13, 2023, YMCA filed an amended complaint for breach of contract and breach of implied duty of good faith and fair dealing causes of action to seek unpaid rent from Defendant. Request for Judicial Notice Exh. D; YMCA Amended Complaint for Damages. | |

DATED: April 4, 2025

KAUFMAN DOLOWICH LLP

Kath Catlos

Katherine S. Catlos
Haruto Cheng
Attorneys for Plaintiff and Cross-Defendant
YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY

# EXHIBIT F

Declaration of Michael A. Slater, September 12, 2022

*Filed in Alameda County Superior Court Case No. 22CV008690*

Michael A. Slater, Esq. (SBN 318899)
**THE SLATER LAW FIRM, APC**
515 South Flower Street, 18th Floor
Los Angeles, California 90071
E-mail: mslater@theslaterlawfirmapc.com
Tel: (818) 645-4406

Attorneys for Respondent,
ARNAUD CAMMAS

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**09/12/2022 at 02:17:30 PM**
By: Christina Rogers,
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

YMCA OF THE EAST BAY,

Petitioner,

vs.

ARNAUD CAMMAS.

Respondent.

CASE NO.: 22-cv-016890

**DECLARATION OF MICHAEL A. SLATER IN SUPPORT OF RESPONDENT ARNAUD CAMMAS'S RESPONSE TO PETITIONER YMCA OF THE EASY BAY'S PETITION FOR WORKPLACE VIOLENCE RESTRAINING ORDER**

Judge: Hon. Victoria Kolakowski
Dept.: 519 (Hayward Hall of Justice)

## DECLARATION OF MICHAEL A. SLATER

1. I, Michael A. Slater, am counsel of record for Respondent Arnaud Cammas in the above-captioned matter. I have personal knowledge of the facts, documents and media identified in this declaration and, if so called, could and would testify competently thereto.

2. On March 21, 2022, Petitioner filed a petition for a workplace violence TRO against Respondent seeking to protect, among other persons, YMCA employees: Lance Goree, Rose Acosta and Antonio Acosta. (Case No. 22-cv-008690). My client, Arnaud Cammas, has provided me with a copy of the March 21, 2022 Petition.

3. On August 21, 2022, I emailed Petitioner's counsel, Lauren E. Jones, at ljones@kdvlaw.com to confirm the scope of her representation of the YMCA of the East Bay ("Petitioner"); to advise Ms. Jones that my client intended to file civil claims against Petitioner,

Lance Goree and Rose Acosta for injuries my client sustained during the 2/4/22 Incident; and to advise Ms. Jones of Petitioner's obligation to preserve relevant evidence. Having received no response from Ms. Jones or anyone at her law firm to my August 21, 2022 email, on September 7, 2022, I emailed Ms. Jones again. To date, Ms. Jones has not responded to those emails directly. My first and only communication from Ms. Jones was a September 9, 202 email from Ms. Jones in which she indicated she did not receive my August 21, 2022 and September 7, 2022 emails. Attached hereto as **Exhibit 4** is a true and correct copy of my August 21, 2022 email and September 7, 2022 emails to Ms. Jones.

4. I am the Founding Partner at The Slater Law Firm, APC, and this December will enter by sixth year of law practice. Before founding SLF, I was an associate attorney at Burke, Williams & Sorensen, LLP, where I litigated constitutional claims against government entities and business disputes between private parties. Before that, I was an associate attorney at Boornazian, Jensen & Garthe, LLP, where I litigated myriad first- and third-party insurance claims. I graduated from the University of California, Hastings College of the Law in 2017, during which time I had the privilege of serving a judicial extern to United States Magistrate Judge Kandis A. Westmore in Oakland, California.

5. In order to prepare my client's Response to Petitioner's Petition, I conducted 13.80 hours of legal work. The 13.80 hours I spent preparing the Motion was reasonable and necessary to present the various legal issues presented. As broken down in this declaration below, I had to closely review the Petition and the evidence filed in support. Litigating workplace violence restraining orders is not an area of practice most California attorneys are familiar with. In order to prepare this Response, I had to identify the legal standards governing petitioners for workplace violence restraining orders under CCP section 527.8—including what "unlawful violence," "assault," "battery" and "stalking" mean within the governing statute, and how those terms have been construed by California courts. Additionally, given the apparent impropriety of the Petition itself, I was also required to determine the availability of sanctions to attempt to deter Petitioner from taking future action to intimidate or otherwise harass Respondent.

6. The 14.80 hours of legal work I conducted preparing the Response to the Petition can be broken down by the following tasks:

A. **9/9/22**: Receive, review and analyze Petition for Workplace Violence Restraining Order (the "Petition"), including the petition form and all declarations and evidence filed in support of the Petition, to formulate Response strategies **(1.20)**;

B. **9/9/22**: Identify, review and detailed analysis of legal standards governing petitioners for workplace violence restraining orders under CCP section 527.8—including what "unlawful violence," "assault," "battery" and "stalking" mean within the governing statute, and how those terms have been construed by California courts **(2.20)**;

C. **9/9/22**: Evaluating availability of sanctions should the Court find that Petitioner filed the Petition with improper purpose, for bad faith and/or if the Petition is found to be frivolous; and identify the legal framework governing same **(1.0)**;

D. **9/9/22**: Prepare Respondent's Response (Form) to the Petition **(.90)**;

E. **9/9/22**: Prepare Respondent's "Attachment 11 – Reasons I Disagree" to the Petition **(1.80)**;

F. **9/9/22**: Prepare Declaration of Arnaud Cammas in support of Respondent's Response to the Petition **(.70)**;

G. **9/10/22**: Continue preparing Respondent's Response (Form) to the Petition **(.20)**;

H. **9/10/22**: Continue preparing Respondent's "Attachment 11 – Reasons I Disagree" to the Petition **(2.80)**;

I. **9/11/22**: Finish preparing Respondent's Response (Form) to the Petition **(.10)**;

J. **9/11/22**: Finish preparing Respondent's "Attachment 11 – Reasons I Disagree" to the Petition, including Respondent's request for attorney' fees **(2.10)**;

K. **9/11/22**: Preparing Declaration of Michael A. Slater in support of Respondent's Response to the Petition **(.80)**;

L. **9/12/22**: Identify, review and prepare all documentary and media evidence in support of Respondent's Response to the Petition **(.50)**; and

/ / /

M. **9/12/22**: Finish preparing all Response papers in support of Respondent's Response to the Petition **(.50)**.

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed on September 11, 2022, at Los Angeles, California.

***/s/ Michael A. Slater***
Michael A. Slater
Declarant

# EXHIBIT 4

**From:** Michael Slater
**To:** ljones@kdvlaw.com
**Cc:** Andres Roden
**Subject:** RE: Introduction, Evidence Preservation Demand & Further Handling re: Arnaud Cammas (YMCA) // Case No. 22-cv-016890
**Date:** Wednesday, September 7, 2022 5:38:00 PM
**Attachments:** image001.png
**Importance:** High

---

Ms. Jones,

I note that you never responded to my 8/21/22 email below introducing myself to you as Mr. Cammas's attorney, requesting evidence preservation, and requesting that you cease direct communications with Mr. Cammas.

Yet, mere days after my 8/21/22 email to you, you renewed your efforts to obtain a workplace restraining order against Mr. Cammas on behalf of certain YMCA employees without serving me any of those applications / hearing materials. You must not contact Mr. Cammas directly for any reason moving forward, as Mr. Cammas is represented by counsel. As stated in my email below, all correspondence and materials related to the subject incident must be directed to me. Please be advised that I agree to accept and prefer electronic service of materials moving forward in connection with the restraining order case (Case No. 22-cv-016890). Please confirm you agree to electronic service in connection with Case No. 22-cv-016890, including electronic service of Mr. Cammas's forthcoming Response to petition for Workplace Violence Restraining Order.

Next, please be advised that, unless I hear otherwise from you, tomorrow I intend to reach out to YMCA of the East Bay President and CEO, Fran Gallati, directly regarding the items identified in my 8/21/22 email below, including Mr. Cammas's evidence preservation demand.

Michael Slater

upload image

MICHAEL SLATER
Founding Partner
The Slater Law Firm, APC
M: (818) 645-4406
A: 515 S. Flower St., 18th Fl., Los Angeles, CA 90071
W: www.theslaterlawfirmapc.com
E: mslater@theslaterlawfirmapc.com

The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 818.645.4406. Thank you.

---

**From:** Michael Slater
**Sent:** Sunday, August 21, 2022 10:42 PM
**To:** ljones@kdvlaw.com
**Cc:** Andres Roden <aroden@theslaterlawfirmapc.com>
**Subject:** Introduction, Evidence Preservation Demand & Further Handling re: Arnaud Cammas (YMCA)

Ms. Jones,

Good evening. My law firm has been retained by Arnaud Cammas to represent him in connection with a physical altercation that occurred between Mr. Cammas and at least the following two YMCA employees – Lance Goree and Rose Acosta – on February 4, 2022 at the YMCA of the East Bay (2001 Allston Way, Berkeley, California 94704) (the "subject incident"). I am writing to touch base with you on a few items.

First, please confirm your firm represents the YMCA in connection with the subject incident – as appears to be the case from the attached "Notice to Cease – Nuisance" letter dated August 5, 2022. If your firm does not represent the YMCA in connection with the subject incident, please kindly let me to whom this correspondence should be directed. Thank you.

Second, please be advised that Mr. Cammas is contemplating pursuing civil claims against the YMCA, Mr. Goree and Ms. Acosta stemming from the subject incident. This email will serve as Mr. Cammas's formal demand that the YMCA to preserve all evidence relating to the subject incident. This evidence includes, but is not limited to, videos (including security and surveillance videos) of the subject incident, correspondence related to the subject incident and the complete employment records for Mr. Goree and Ms. Acosta. It is imperative that the YMCA take affirmative steps to preserve all evidence related to the Incident. Failure to preserve evidence, even before litigation is initiated, amounts to spoliation of evidence. *See* Williams v. Russ (2008) 167 Cal. App. 4th 1215, 1223 ["Spoliation of evidence means the destruction or significant alteration of evidence or the failure to preserve evidence for another's use in pending or future litigation."].

Third, please provide me with the contact information for YMCA's applicable liability insurance carriers. If it has not already done so already, the YMCA should notify its insurance carriers of the subject incident. To that end, please have a representative of YMCA's insurance carriers contact me as soon as possible. Thank you.

Fourth, please ensure my office is copied on all correspondence to Mr. Cammas moving forward – be it from your office or from the YMCA directly. Thank you.

Michael Slater

MICHAEL SLATER
Founding Partner
The Slater Law Firm, APC
M: (818) 645-4406
A: 515 S. Flower St., 18th Fl., Los Angeles, CA 90071

upload image

W: www.theslaterlawfirmapc.com
E: mslater@theslaterlawfirmapc.com

The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 818.645.4406. Thank you.

# EXHIBIT G

Berkeley Fire Department NFIRS-1 reports, 2001 Allston Way

*Incident 2021-008958 (September 3, 2021) and Incident 2022-012632 (October 20, 2022), showing the NFIRS Property Use field*

*Produced by the City of Berkeley, PRA Request No. 26-106*

# NFIRS-1 Basic

**A** **City of Berkeley Fire Department** — Fire Department
**09/03/2021** Date | **09:04:59** Time | **2021-008958** Incident Number | **00** Exposure

**B Street address**
2001 ALLSTON WAY Apt or Room [redacted]
Berkeley, CA 94702
Census Tract

**C Incident Type: 300**
Rescue, EMS incident, other

**D Mutual Aid: None**
Their FDID | State | Incident
Responding Departments (Press Other)

**$E_1$ Dates and Times**
Alarm Time 09/03/2021 09:04:59
Time Out 09/03/2021 09:07:04
Arrival 09/03/2021 09:10:52
Controlled
Cleared 09/03/2021 09:59:05

**$E_2$ Shift and Alarms**
B Shift | Alarm | 2 District | Alarm Box

**$E_3$ Special Studies**

**F Actions Taken: 30**
1. Emergency medical services, other

**$G_1$ Resources** — Apparatus | Personnel
Suppression
EMS
Other
Personnel Not on Apparatus
Total Personnel

**$G_2$ Estimated Dollar Losses**
Losses
Property Unknown
Contents Unknown
Pre Incident Value
Property Unknown
Contents Unknown

**$H_1$ Casualties**

| | Deaths | Injuries |
|---|---|---|
| Fire Service | 0 | 0 |
| Civilian | 0 | 0 |

**$H_3$ Hazardous Materials Release**

**J Property Use**
Health care, detention, & correction, other

**$H_2$ Detector**

**I Mixed Property Use**

**$K_1$ Person Entity Involved**
YMCA ALLSTON DOWNTOWN
,

**$K_2$ Owner**

**L Remarks**
E2 and M2 responded for a [redacted] patient. Pt transported code 2 to [redacted]

**M**
**Jonathan Fischer** Officer in Charge | **Captain** Rank | Assignment | **09/03/2021** Date
**Jonathan Fischer** Member Making Report | **Captain** Rank | Assignment | **09/03/2021** Date

**SS Special Studies**

| ID | Title | Entry Description |
|---|---|---|
| 1111 | Homeless Encampment | |

# Redaction Log

| Reason | Page (# of occurrences) | Description |
|---|---|---|
| Personal Identifying Information | **1** (3) | Government Code section 6255 [personal identifying information] |

**NFIRS-1 Basic**

**A City of Berkeley Fire Department** | **10/20/2022** | **02:38:51** | **2022-012632** | **00**
Fire Department | Date | Time | Incident Number | Exposure

**B Street address**
2001 ALLSTON WAY
Berkeley, CA 94704

Census Tract

**C Incident Type: 321**
EMS call, excluding vehicle accident with injury

**D Mutual Aid: None**

Their FDID State Incident

Responding Departments (Press Other)

**E1 Dates and Times**

Alarm Time 10/20/2022 02:38:51
Time Out 10/20/2022 02:41:04
Arrival 10/20/2022 02:44:28
Controlled
Cleared 10/20/2022 03:18:20

**E2 Shift and Alarms**

| Shift | Alarm | District | Alarm Box |
|---|---|---|---|
| C | | 2 | |

**E3 Special Studies**

**F Actions Taken: 33 , 34**
1. Provide advanced life support (ALS)
2. Transport person

**G1 Resources** Apparatus Personnel

Suppression
EMS
Other
Personnel Not on Apparatus
Total Personnel

**G2 Estimated Dollar Losses**

Losses
Property Unknown
Contents Unknown

Pre Incident Value
Property Unknown
Contents Unknown

**H1 Casualties**

| | Deaths | Injuries |
|---|---|---|
| Fire Service | 0 | 0 |
| Civilian | 0 | 0 |

**H3 Hazardous Materials Release**

**J Property Use**
Jail, prison (not juvenile)

**H2 Detector**

**I Mixed Property Use**

**K1 Person Entity Involved**
I talked to the subject

,

**K2 Owner**

**L Remarks**
Pt tranported to Perso

**M**

| | | | |
|---|---|---|---|
| **DeJuan Turner** | **Captain** | | **10/31/2022** |
| Officer in Charge | Rank | Assignment | Date |
| **DeJuan Turner** | **Captain** | | **10/31/2022** |
| Member Making Report | Rank | Assignment | Date |

**SS Special Studies**

| ID | Title | Entry Description |
|---|---|---|
| 1111 | Homeless Encampment | |

# Redaction Log

| Reason | Page (# of occurrences) | Description |
|---|---|---|
| Personal Identifying Information | **1** (1) | Government Code section 6255 [personal identifying information] |

# EXHIBIT H

Plaintiff's verified responses to Defendants' form interrogatories

*Response to Form Interrogatory (UD) No. 71.7, identifying comparator tenants*
*Filed by Defendants as Exhibit C to the Declaration of Katherine S. Catlos*
*in support of their motion for summary judgment, April 4, 2025*

KAUFMAN DOLOWICH LLP
Katherine S. Catlos (SBN 184227)
Haruto Cheng (SBN 355203)
425 California Street, Suite 2100
San Francisco, California 94104
Telephone: (415) 926-7600
Facsimile: (415) 926-7601
Email: kcatlos@kaufmandolowich.com
haruto.cheng@kaufmandolowich.com

Attorneys for Plaintiff and Cross-Defendant
YOUNG MEN'S CHRISTIAN ASSOCIATION
OF THE EAST BAY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ALAMEDA**

| | |
|---|---|
| YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY, a California nonprofit public benefit corporation;<br><br>Plaintiff,<br><br>v.<br><br>ARNAUD LOUIS RAUL CAMMAS, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants.<br><br>ARNAUD LOUIS RAUL CAMMAS, an individual;<br><br>Cross-Complainant,<br><br>v.<br><br>YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY, a California nonprofit public benefit corporation; and ROES 1 through 25, inclusive,<br><br>Cross-Defendants. | Case No.: 23CV031079<br><br>Action Filed: April 13, 2023<br>Trial Date: August 1, 2025<br><br>*Case Assigned to Honorable Karin Schwartz in Dept. 20 for All Purposes*<br><br>**DECLARATION OF KATHERINE S. CATLOS IN SUPPORT OF PLAINTIFF AND CROSS-DEFENDANT YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Hearing: August 6, 2025<br>Time: 3:00 p.m.<br>Dept.: 20<br>Judge: Honorable Karin Schwartz<br><br>**Reservation No.: 794674891568**<br><br>[Filed Concurrently with the Notice of Motion; Memorandum of Points and Authorities; Separate Statement of Undisputed Facts; Declaration of Kelley Maltais; Request for Judicial Notice and [Proposed] Order] |

I, Katherine S. Catlos, hereby declare:

1. I am an attorney at law licensed to practice before the bar of this Court and am counsel for Plaintiff and Cross-Defendant Young Men's Christian Association of the East Bay ("Plaintiff" and "YMCA") in this action.

2. I have personal knowledge of the facts set forth in this declaration, except those based on information and belief, which I believe to be true. If called upon to testify to the matters discussed herein, I could and would be competent to testify thereto.

3. I propounded YMCA's Request for Admission, Set One to Defendant on September 22, 2023.

4. That the true and correct copy of YMCA's Request for Admission, Set One propounded to Defendant, is attached hereto as **Exhibit A**.

5. That the true and correct copy of Defendant Arnaud Cammas' responses to Plaintiff's Request for Admission, Set One, attached hereto as **Exhibit B**.

6. That the true and correct copy of Defendant Arnaud Cammas' response to Plaintiff's Form Interrogatories – Unlawful Detainer, Set One, attached hereto as **Exhibit C**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this fourth day of April 2025 in Oakland, California.

Kath Catlos

Katherine S. Catlos

Responding Party's investigation into information responsive to this request remains ongoing. Based on Responding Party's fact investigation to date, between the months of June 2021 to July 2023, Responding Party believes that he paid rent on August 2021, September 2021, October 2021, November 2021 and December 2021, and that he did not pay rent on June 2021, February 2022 through July 2023. Responding Party paid his rent in cash and often times receipts were not provided to him.

No information was withheld on the basis of the objections asserted. Discovery is continuing and ongoing. Responding Party reserves the right to amend this response based upon any information, evidence, documents, facts, and things that hereafter may be discovered, identified, or obtained.

**FORM INTERROGATORY (UD) NO. 71.5:**

Since the beginning of defendant's tenancy, has PLAINTIFF ever raised the rent? If so, for each rent increase state:

(a) the date the increase became effective;

(b) the amount;

(c) the reasons for the rent increase;

(d) how and when defendant was notified of the increase;

(e) the identity of all DOCUMENTS evidencing the increase and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT.

**RESPONSE TO FORM INTERROGATORY (UD) NO. 71.5:**

Yes. Responding Party's rent was raised at least one time during Responding Party's tenancy at the subject premises.

**FORM INTERROGATORY (UD) NO. 71.7:**

Has any PERSON ever reported any nuisance or disturbance at or destruction of the RENTAL UNIT or PROPERTY caused by defendant or other occupant of the RENTAL UNIT or their guests? If so, for each report state;

(a) a description of the disturbance or destruction;

(b) the date of the report;

(c) the name of the PERSON who reported;

(d) the name of the PERSON to whom the report was made;

THE SLATER LAW FIRM, APC
1900 Ave. Of The Stars, 17th Fl
Los Angeles, CA 90067

(e) what action was taken as a result of the report;

(f) the identity of all DOCUMENTS evidencing the report and for each state the name, ADDRESS, and telephone number of each PERSON who has each DOCUMENT.

**RESPONSE TO FORM INTERROGATORY (UD) NO. 71.5:**

Responding Party objects to this interrogatory on the grounds that it is vague and ambiguous, because the term "nuisance" is not defined and subject to multiple interpretations. Responding Party objects to this interrogatory on the grounds it seeks information that is not relevant to the subject matter of the action. (Code Civ. Proc., § 2017.010.) More specifically, Propounding Party is no longer bringing an unlawful detainer action against Responding Party. Without waiving the foregoing objections, Responding Party responds as follows:

The YMCA's disparate treatment of Responding Party versus other tenants is not only demonstrated by the timing of its legal actions against Responding Party, which were taken in earnest only after the YMCA was given notice by Responding Party that he intended to sue the YMCA and its employees for damages he sustained as a result of a February 2022 battery incident involving then-YMCA-employee, Lance Goree. It is also demonstrated by the fact that other tenants of the Subject Premises have done things far worse than anything the YMCA alleged Responding Party did – including, but not limited to: breaking windows; public suicide attempts; assault and battery; harassment based upon national origin; excessive noise; and destruction of property and vandalism – yet none of those tenants have been targeted by the YMCA for eviction.

For example, on April 15, 2017, the Berkeley Police Department ("BPD") responded to the Subject Premises because Tenant Peete was suspected of committing a battery against Goree. Yet, the YMCA took no steps to evict Tenant Peete from the Subject Premises even though Tenant Peete's conduct was more severe and disruptive than (but, at a minimum, equal to) the conduct the YMCA alleged against Responding Party in its First and Second Unlawful Detainer Lawsuits.

For example, on November 13, 2017, the BPD responded to the Subject Premises because Tenant Tzimopoulos was suspected of committing a battery against Goree. Yet, the YMCA took no steps to evict Tenant Tzimopoulos from the Subject Premises even though Tenant Tzimopoulos's conduct was more severe and disruptive than (but, at a minimum, equal to) the conduct the YMCA alleged against Responding Party in its First and Second Unlawful Detainer Lawsuits.

THE SLATER LAW FIRM, APC
1900 Ave. Of The Stars, 17th Fl
Los Angeles, CA 90067

For example, on or about November 29, 2020, Tenant Bigbee broke a window of his apartment at the Subject Premises and made excessive noise from in the Subject Premises. And yet the YMCA has taken no steps to evict Tenant Bigbee from the Subject Premises, even though Tenant Bigbee's conduct was more severe and disruptive than the conduct the YMCA alleged against Responding Party in its First and Second Unlawful Detainer Lawsuits.

For example, on January 6, 2021, the BPD responded to the Subject Premises because Tenant Bigbee was suspected of throwing several items from the front desk onto the floor – including a printer and a computer. Upon BPD's arrival to the Subject Premises, Goree explained to the BPD officers that the YMCA had to call BPD more than ten (10) times for other disturbances perpetrated by Tenant Bigbee. Goree further explained to the BPD officers that Tenant Bigbee was not paying his rent at the Subject Premises; and that the process the YMCA typically followed when tenants of the Subject Premises did not pay their rent was to first see if said tenants would voluntarily leave the Subject Premises without having to pay rents due under their leases and, if they refused, the YMCA ***would only then*** start the eviction process. And yet the YMCA has taken no steps to evict Tenant Bigbee from the Subject Premises, even though Tenant Bigbee's conduct was more severe and disruptive than the conduct the YMCA alleged against Responding Party in its First and Second Unlawful Detainer Lawsuits, and even though Tenant Bigbee has refused to pay his rent.

For example, on September 29, 2021, the BPD responded to the Subject Premises because Tenant Cumbo was suspected of having a psychotic break and, as a result, was scaring other tenants of the Subject Premises. And yet the YMCA has taken no steps to evict Tenant Cumbo from the Subject Premises, even though Tenant Cumbo's conduct was more severe and disruptive than the conduct the YMCA alleged against Responding Party in its First and Second Unlawful Detainer Lawsuits.

For example, on December 20, 2021, the BPD responded to the Subject Premises because Tenant Schroyer's apartment was covered in urine and feces, had a fly infestation and smelled heavily of bodily fluids and rotten food. The BPD determined that the YMCA "[was] aware" of the condition Tenant Schroyer lived in. And yet the YMCA has taken no steps to evict Tenant Schroyer from the Subject Premises, even though Tenant Schroyer's conduct was more severe and disruptive than the conduct the YMCA alleged against Responding Party in its First and Second Unlawful Detainer Lawsuits.

THE SLATER LAW FIRM, APC
1900 Ave. Of The Stars, 17th Fl
Los Angeles, CA 90067

For example, on or ab out December 24, 2021, the BPD responded to the Subject Premises because Tenant Huber – who was found by BPD and the YMCA to be exhibiting signs of pathological paranoia – had reported that her neighbor and the Subject Premises was, among other things, conspiring to kidnap her and had installed electrical wires in her walls in order to electrocute her. When the BPD asked Goree about Tenant Huber, Goree acknowledged that Tenant Huber had become a problem for the YMCA. And yet the YMCA has taken no steps to evict Tenant Huber from the Subject Premises, even though Tenant Huber's conduct was more severe and disruptive than the conduct the YMCA alleged against Responding Party in its First and Second Unlawful Detainer Lawsuits.

For example, on or about October 19, 2023, the BPD responded to the Subject Premises because Tenant Barberio had exhibited a deadly weapon in suspected violation of PC 417(A)(1). And yet the YMCA has taken no steps to evict Tenant Barberio from the Subject Premises, even though Tenant Barberio's conduct was more severe and disruptive than the conduct the YMCA alleged against Responding Party in its First and Second Unlawful Detainer Lawsuits.

Additionally, the BPD responded to the Subject Premises on the following dates and for the following reasons, and yet the YMCA has taken no steps to evict the responsible tenants for their conduct: 10/17/19 (disturbance); 5/15/20 (felony assault and battery); 10/13/21 (misdemeanor assault and battery); 10/19/21 (domestic violence); 12/7/21 (misdemeanor assault and battery); 12/10/22 (felony assault and battery); and 4/15/23 (misdemeanor assault and battery).

Additionally, numerous times since approximately 2019 to the present, tenants of the Subject Premises have harassed other tenants on the basis of their national origins. And yet the YMCA has taken no steps to evict those tenants from the Subject Premises.

No information was withheld on the basis of the objections asserted. Discovery is continuing and ongoing. Responding Party reserves the right to amend this response based upon any information, evidence, documents, facts, and things that hereafter may be discovered, identified, or obtained.

**FORM INTERROGATORY (UD) NO. 71.8:**

Does the complaint allege violation of a term of a rental agreement or lease (other than nonpayment of rent)? If so, for each covenant:

(a) identify the covenant breached;

THE SLATER LAW FIRM, APC
1900 Ave. Of The Stars, 17th Fl
Los Angeles, CA 90067

# EXHIBIT I

Certified criminal records search, Alameda County Superior Court

*Issued August 9, 2023 by Deputy Clerk Shvata Malhotra*

*NO CHARGES FILED, INTEREST OF JUSTICE*

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

☐ **Fremont Hall of Justice**
39439 Paseo Padre Parkway, Fremont, CA 94538
(510) 818-7501

☐ **René C. Davidson Courthouse**
1225 Fallon Street, Oakland, CA 94612
(510) 891-6009

☐ **East County Hall of Justice**
5151 Gleason Drive, Dublin, CA 94568
(925) 227-6700

☒ **Wiley W. Manuel Courthouse**
661 Washington Street, Oakland, CA 94607
(510) 627-4702

## CRIMINAL RECORDS SEARCH

I certify that I have searched the indexes for the Superior Court of California, County of Alameda, as follows:

Name Searched: CAMMAS, ARNAUD LOUIS RAUL CEN: 2362291

Date of Birth Searched: 01/20/1998

**Search Results**:

☐ After a search of the automated Criminal Index for the period November 1973 through , 20 , no record of a Complaint having been filed was found for the above-named person in the Superior Court of California, County of Alameda. The records you requested may exist under another spelling or name; however, based on the information provided, we were unable to locate any records.

☐ The court file you requested is not available. Pursuant to Government Code section 68152, the file was eligible for destruction and thereby it is not available.

☒ Information found as follows: ☒ through the automated Criminal Index which is not the official court record:

- ☐ Alameda County Superior Court Case No.:
- ☐ Defendant was convicted on for violation(s) of:
- ☐ Defendant placed on probation for a period of on
- ☐ Defendant's probation was extended through on
- ☒ Other: NO CHARGES FILED – INTEREST OF JUSTICE ON CEN: 2362291 ON 11/23/2022

__NOTE__: Records are routinely destroyed pursuant to Government Code Section 68152 upon the expiration of the retention period. To research criminal case information further, contact: State of California, Department of Justice, Records Unit, P.O. Box 903417, Sacramento, CA 94203-4170, phone number: 916-227-3835.

*Deputy Clerk*
Print Name: Shvata Malhotra

08/09/2023
Date

# EXHIBIT J

Alameda County Coroner's Bureau investigation reports

*Brett Elliott Schnaper, Coroner Case No. 2022-02843 (July 14, 2022)*

*Michael Robert Surryhne, Coroner Case No. 2022-04114 (October 17, 2022)*

*Both deaths at 2001 Allston Way, reported by the Berkeley Police Department*

Alameda County Coroner's Bureau
Yesenia Sanchez Sheriff - Coroner
2901 Peralta Oaks Court, Oakland, CA 94605
(510) 382-3000

# Coroner Investigator's Report

## CALL INFO

| NAME OF DECEASED (LAST, FIRST MIDDLE) | ID STATUS | CASE NUMBER |
|---|---|---|
| **SCHNAPER, Brett Elliott** | Positive | **2022-02843** |

| REPORTED BY | REPORTED BY PHONE | REPORTING AGENCY | REFERENCE NUMBER |
|---|---|---|---|
| Navosni, J 1118 | [redacted] | Berkeley Police Department | 2022-32000 |

| INVESTIGATOR | CALL DATE AND TIME | CASE TYPE |
|---|---|---|
| VALVERDE, Alejandro | 7/14/2022 0628 | Removal Case |

## DECEDENT

| DATE AND TIME OF DEATH | DATE OF BIRTH | AGE | GENDER | RACE | MARITAL STATUS | VET |
|---|---|---|---|---|---|---|
| 7/14/2022 FND UNK | 10/11/1961 | 60 Years | Male | Caucasian/White | Unknown | Unknown |

| HGT | WGT | EYE COLOR | HAIR COLOR | OCCUPATION | EMPLOYER |
|---|---|---|---|---|---|
| 5' 8" | 134 lb | Blue | Blond | | |

**Preliminary Summary:** Undetermined manner of death of a 60-year-old male, identified as Brett Schnaper, who died in his Oakland residence. Schnaper was a resident at the Berkeley YMCA when staff noticed maggots coming from under his door and foul odor from the room. Berkeley fire responded and found Schnaper in the advanced stages of decomposition. Medication on scene was lisinopril, metformin and gabapentin. PMD at Lifelong medical. Unable to locate next of kin.

## DEATH

| LOCATION OF DEATH | LOC TYPE |
|---|---|
| Decedent residence | Decedent Residence |

| ADDRESS (STREET, CITY, STATE, ZIP) | COUNTY |
|---|---|
| 2185 Milvia Street Apt 426, Berkeley, CA, 94704 | Alameda |

| | | | |
|---|---|---|---|
| Manner | Natural | Death Certificate Signed By | |
| Cause A | Atherosclerotic coronary artery disease | Interval | Years |
| Cause B | | Interval | |
| Cause C | | Interval | |
| Cause D | | Interval | |
| Other Significant Conditions | Diabetes Mellitus | | |

## NOTIFIC.

| LEGAL NEXT OF KIN | RELATIONSHIP | TELEPHONE NO. |
|---|---|---|
| Schnaper, Ann | Sister | |

| NOTIFIED BY | METHOD | DATE AND TIME |
|---|---|---|
| | | 7/14/2022 1803 |

| IDENTIFICATION METHOD | DATE AND TIME |
|---|---|
| Fingerprint Comparison | 7/21/2022 1509 |

## INCIDENT

| LOCATION OF INCIDENT | AT WORK |
|---|---|
| | |

| ADDRESS (STREET, CITY, STATE, ZIP) | COUNTY | DATE AND TIME OF INCIDENT |
|---|---|---|
| | | |

| INVESTIGATING AGENCY | INV AGENCY PHONE NUMBER | OFFICER |
|---|---|---|
| | | |

## DISP

| FUNERAL HOME | BODY RELEASE TO FUNERAL HOME ON |
|---|---|
| aDirectCremation.com | 8/3/2022 1602 |

| AUTOPSY / EXAM TYPE | EXAM BY |
|---|---|
| Full Autopsy | FROST, Beth |

**Alameda County Coroner's Bureau**
2901 Peralta Oaks Court
Oakland, CA 94605
(510) 382-3000

# AUTOPSY REPORT

| | | | |
|---|---|---|---|
| **Name**: | BRETT ELLIOTT SCHNAPER | **Case #**: | 2022-02843 |
| **Age:** | 60 | **Sex**: | Male |
| **Date of death**: | 07/14/2022 | **Date of autopsy**: | 07/16/2022 |
| **Time of death**: | Unknown hours | **Time of autopsy**: | 1400 hours |

**CAUSE OF DEATH**: Atherosclerotic coronary artery disease

**OTHER SIGNIFICANT CONDITIONS:** Diabetes mellitus

COLIN HEBERT, M.D.
Forensic Pathologist

February 17, 2023
DATE

## MAJOR AUTOPSY FINDINGS

I. Atherosclerotic coronary artery disease, severe:

   A. 99% stenosis of both the left anterior descending coronary artery and its first diagonal branch.

   B. Myocardial scar (remote infarction), interventricular septum.

II. Toxicologic analysis, results per NMS Labs; postmortem liver tissue sample:

   A. Delta-9 carboxy THC and Delta-9 THC (marijuana metabolites), positive qualitative results.

III. No evidence of trauma

IV. Mild to moderate state of decomposition.

V. Past medical history of diabetes mellitus.

## SUMMARY & OPINION

According to investigative information, the decedent was a 60-year-old male who was reportedly found deceased and decomposing in his residence. The decedent had an apparent medical history of diabetes mellitus, based upon prescription medication.

A forensic autopsy demonstrated evidence of severe, atherosclerotic coronary artery disease with remote myocardial infarction.

Toxicology testing was performed and was positive for marijuana metabolites.

Based on the totality of available information, including investigative, toxicologic, and autopsy findings, the cause of death is due to **atherosclerotic coronary artery disease.** **Diabetes mellitus** is listed as a contributing factor.

## INTRODUCTION

The autopsy is performed under the legal authority of the Alameda County Coroner's Bureau as defined in California Code § 27491. The examination is performed at the Alameda County Coroner's Bureau at 2901 Peralta Oaks Court, Oakland, CA, 94605, by Beth Frost, DO. Colin Hebert, MD has reviewed the investigative information, scene photographs, toxicology report, autopsy findings/photographs, and subsequently completed the autopsy report.

**Identification and Receipt:**

The body is received in a sealed body pouch. Two Coroner's identification tags that are inscribed with the decedent's name and case number are affixed to the outside of the bag. The tags are subsequently affixed to the left great toe.

**Autopsy Assistants**:

The case pathologist is assisted by the following Sheriff's Technician(s):

- Edward Urbano

**Outside Observers**:

None

**Photography**:

Autopsy photographs are taken by:

- Edward Urbano

**Clothing and Personal Effects**:

Clothing was not examined at this time.

## EXTERNAL EXAMINATION

The body is that of a normally nourished, mild to moderately decomposed male with an average build, whose appearance is consistent with the reported age of approximately 45 to 70 years. The body measures 68" in length and weighs 134 pounds. The body is cool to touch. Rigor mortis has passed. Livor mortis is posterior and fixed. Diffuse skin slippage and green, dusky discoloration is noted. Insect activity (fly larvae) is present.

The scalp hair is absent. Facial hair consists of a long gray beard. The eyes are dessicated. The conjunctivae are darkened and without icterus or ocular petechiae. The nose and ears are symmetric and free of injury. The mouth has a pink mucosa that is free of injury. The teeth are natural and in average condition. The neck, chest, and abdomen are symmetric. The external male genitalia are unremarkable. The upper and lower extremities and back are symmetrical.

## EVIDENCE OF MEDICAL INTERVENTION

None

## EVIDENCE OF INJURY

None

## INTERNAL EXAMINATION

**Body cavities**:

The pleural, pericardial, and peritoneal cavities are free of fluid or adhesion and have smooth linings. The organs are in their normal anatomic positions.

**Head:**

The reflected scalp is free of contusion. The calvarium and base of the skull are free of fracture. The epidural, subdural and subarachnoid spaces are free of hemorrhage. The leptomeninges are transparent. The 1180-gm brain has a normal size and shape with symmetric cerebral and cerebellar hemispheres. The gyri and sulci have a normal pattern. The cranial nerves are normally distributed. The blood vessels at the base of the brain are free of aneurysm or atherosclerosis. The cortices are tan, uniform, and free of contusion or discoloration. The white matter is homogeneous and symmetric. The deep nuclei are tan, uniform and symmetric. The ventricles are normal caliber. The midbrain, pons, and medulla are symmetric and free of lesion. The locus ceruleus and substantia nigra are normally pigmented. The cerebral aqueduct has a normal caliber.

**Neck:**

The muscles of the anterior and lateral neck are free of hemorrhage. The hyoid bone and thyroid cartilage are intact. The upper airway is patent. The cervical vertebral column and tracheal cartilages are free of injury.

**Cardiovascular System**:

The heart weighs 320 grams and has a smooth red epicardial surface and normal distribution of epicardial fat. The coronary arteries arise in normal positions, have normal distributions and exhibit severe atherosclerosis, with up to 99% stenosis of the left anterior

descending artery and its first diagonal branch. The right coronary artery supplies the posterior interventricular septum. The myocardium of the interventricular septum exhibits a 1.0 cm scar (remote infarction), with the remaining myocardium being dark red, homogeneous, and free of fibrosis or hemorrhage. The left ventricle is 1.0 cm thick, the interventricular septum is 1.5 cm thick, and the right ventricle is 0.3 cm thick. The endocardial surfaces are unremarkable. The valves are thin, pliable, and free of vegetation. The chordae tendineae and papillary muscles are not thickened. The fossa ovalis is closed. The coronary sinus is patent. The great vessels arise in normal positions. The aorta exhibits focally moderate atherosclerosis. The pulmonary arteries and venae cavae are free of thrombi or emboli.

**Respiratory System**:

The right lung weighs 560 grams, and the left lung weighs 480 grams. The pleural surfaces are smooth and dark red. The congested parenchyma is dark red, homogenous, and free of consolidation or neoplasm. The bronchi have tan mucosae and are free of obstruction.

**Hepatobiliary System**:

The liver weighs 740 grams and has a smooth, brown capsule overlying homogeneous, soft, brown parenchyma. The gall bladder contains approximately 2 mL of bile.

**Hemolymphatic System**:

The spleen weighs 210 grams and has a smooth, dark red-purple capsule overlying homogeneous dark red parenchyma. There are no enlarged lymph nodes.

**Endocrine System**:

The pituitary gland is not enlarged. The thyroid gland has symmetric lobes. The adrenal glands have yellow cortices of normal thickness and unremarkable red/gray medullae.

**Gastrointestinal System**:

The esophagus has a smooth tan mucosa. The serosa of the stomach is smooth and red-pink. The mucosa is tan-red and free of lesion. The stomach contains approximately 100 mL of partially digested food. The serosae of the small and large intestines are smooth and tan-brown. The intestines are free of obstruction, neoplasm, or adhesion upon palpation along their lengths. The appendix is present.

**Genitourinary System**:

The right and left kidneys weigh 150 and 140 grams, respectively. The kidneys have smooth red cortices, normal cortical thicknesses, and normal pyramidal architecture. The pelves have smooth tan mucosae. The renal arteries and veins are unremarkable. The ureters have normal courses and calibers to the urinary bladder. The bladder has a tan mucosa and is empty. The prostate and testes are unremarkable.

**Musculoskeletal System**:

The sternum, clavicles, vertebral column, and pelvis are free of fracture. The musculature is normally distributed and is unremarkable.

**SPECIMENS & EVIDENCE RETAINED**

**Toxicology**:

*The following samples are retained:*

- Liver
- Skeletal muscle

**Tissue**:

Samples of each examined organ / organ system are retained in formalin.

**Photographs**:

Facial identification, external overall, and photographs of selected findings are produced during the course of autopsy.

I have reviewed the autopsy photographs and I affirm that they accurately represent the body.

**Radiographs**:

None

**Evidence**:

None

Alameda County Coroner's Bureau
Yesenia Sanchez Sheriff - Coroner
2901 Peralta Oaks Court, Oakland, CA 94605
(510) 382-3000

# Coroner Investigator's Report

**CALL INFO**

| NAME OF DECEASED (LAST, FIRST MIDDLE) | ID STATUS | CASE NUMBER |
|---|---|---|
| **SURRYHNE, Michael Robert** | Positive | **2022-04114** |

| REPORTED BY | REPORTED BY PHONE | REPORTING AGENCY | REFERENCE NUMBER |
|---|---|---|---|
| Macapagal, J. | [redacted] | Berkeley Police Department | 22-49154 |

| INVESTIGATOR | CALL DATE AND TIME | CASE TYPE |
|---|---|---|
| ROBERTSON, Joshua | 10/17/2022 1915 | Removal Case |

**DECEDENT**

| DATE AND TIME OF DEATH | DATE OF BIRTH | AGE | GENDER | RACE | MARITAL STATUS | VET |
|---|---|---|---|---|---|---|
| 10/17/2022 UNK | 4/23/1958 | 64 Years | Male | Caucasian/White | Unknown | Yes |

| HGT | WGT | EYE COLOR | HAIR COLOR | OCCUPATION | EMPLOYER |
|---|---|---|---|---|---|
| 5' 11" | 70 lb | Brown | Brown | Unknown | |

**Preliminary Summary:** Natural death of a 64 year old white male identified as Michael Robert Surryhne, who died in his Berkeley residence. On 10/17/22, about 1805 hrs, Surryhne's roommate was with him when he stopped breathing and became unresponsive. 911 was called and paramedics responded. About 1824 hrs, Surryhne's death was determined by BFD paramedics with an EKG. No known medical history and had not seen a doctor in years. Surryhne had been experiencing difficulty breathing, and declining health for several days, his roommate wanted to call for medical help but Surryhne asked him not to. No trauma, drugs, alcohol or suspicious circumstances. Surryhne's roommate was his DPOA and was notified.

**DEATH**

| LOCATION OF DEATH | LOC TYPE |
|---|---|
| Decedent residence | Decedent Residence |

| ADDRESS (STREET, CITY, STATE, ZIP) | COUNTY |
|---|---|
| 2001 Allston Way Apt. 403, Berkeley, CA, 94704 | Alameda |

| | | | |
|---|---|---|---|
| Manner | Natural | Death Certificate Signed By | |
| Cause A | Lobar Pneumonia | Interval | Unknown |
| Cause B | Chronic Obstructive Pulmonary Disease | Interval | Yrs |
| Cause C | | Interval | |
| Cause D | | Interval | |
| Other Significant Conditions | None | | |

**NOTIFIC.**

| LEGAL NEXT OF KIN | RELATIONSHIP | TELEPHONE NO. |
|---|---|---|
| Linder, Deborah | Sister | [redacted] |

| NOTIFIED BY | METHOD | DATE AND TIME |
|---|---|---|
| | | 11/7/2022 2226 |

| IDENTIFICATION METHOD | DATE AND TIME |
|---|---|
| Personal Identification | 10/17/2022 2355 |

**INCIDENT**

| LOCATION OF INCIDENT | AT WORK |
|---|---|
| | |

| ADDRESS (STREET, CITY, STATE, ZIP) | COUNTY | DATE AND TIME OF INCIDENT |
|---|---|---|
| | | |

| INVESTIGATING AGENCY | INV AGENCY PHONE NUMBER | OFFICER |
|---|---|---|
| | | |

**DISP**

| FUNERAL HOME | BODY RELEASE TO FUNERAL HOME ON |
|---|---|
| Grissom's-San Lorenzo Chapel | 12/30/2022 1226 |

| AUTOPSY / EXAM TYPE | EXAM BY |
|---|---|
| Full Autopsy | SHUMAN, Mark |

# EXHIBIT K

*Produced by the City of Berkeley in response to Public Records Act Request No. 24-1431, and circulated among Rent Board legal staff the same day*

**From:** Dahl, Nathan
**To:** Ehlinger, Oliver; Brown, Matthew (Matt); Kim, Hannah
**Subject:** FW: Issues at YMCA 2001 Allston
**Date:** Wednesday, May 15, 2024 11:35:36 AM

Internal

Hello Legal staff,

Thanks for moving swiftly for a mediation for a tenant facing eviction at 2001 Allston Way.

I wanted to share this message from another tenant that details similar complaints.. This client has been working with EDC, but they seem to be pushing for more direct involvement from RSB.

**From:** Orozco, Carla <corozco@berkeleyca.gov>
**Sent:** Wednesday, May 15, 2024 10:01 AM
**To:** Dahl, Nathan <NDahl@berkeleyca.gov>
**Subject:** FW: Nate Q-Housing Counseling Appointment

**From:** BYRA [redacted]
**Sent:** Wednesday, May 15, 2024 9:33 AM
**To:** Orozco, Carla <corozco@berkeleyca.gov>
**Cc:** Sandoval, Leticia <LSandoval@berkeleyca.gov>; RSBAlpert <RSBAlpert@berkeleyca.gov>; totox2@gmail.com
**Subject:** Re: Housing Counseling Appointment

**WARNING:** This is not a City of Berkeley email. Do not click links or attachments unless you trust the sender and know the content is safe.

Dear Ms Orozco:

We spoke about a year or so ago about compensatory damages for rent-controlled tenants affected by their landlord Fran Gallati d\b\a Berkeley YMCA Hotel's multiplicity of statutory violations. Following are some of the reasons warranting tenants to withhold rent.

1. Elevator: Landlord refuses to fix the defective elevator which has been suspended repeatedly by the State for the last 6 years.
Unlicensed Elevator Malfunction; Suspension; Latest Inspection.
2. Hate Crimes: Landlord's illegal conversion of the hostel into a Halfway House continues to generate Hate Crimes on Hispanic Americans after 6 years. Director Dorsey adamantly enables the bullies in discriminatory fashion. Director Goree assaulted 2 Hispanic American tenants in the premises; habitually ignored police reports; doctored CCTV footage when sued. Cammas_v_YMCA.
3. Breaches of Contract: Landlord continually violated Statutory Law and their implicit contracts between Landlord-Tenant, Government-Beneficiary 42 U.S.C. 2000(d) et seq. Title VII Class v Title VI Grantee, BYRA v YMCA.
4. Doing well v Doing good: Landlord has kept 5 out of 10 rooms in my hallway [317-327] vacant for

90% of the last 4-year calendar [more throughout the compound] while Senior Management has bragged in public about their "Business Model." Landlord should refund ALL rents paid by its tenants 2018-2024 as compensatory damages for the aforementioned violations and should also refund the U.S. Taxpayer for milking the state under the disguise of humanitarianism.

13.76.060 BMC F11-14 establishes the Rent Board's Agency and Duty on this matter and obviates filing with the overburdened Alameda County Superior Court.
"The elected Rent Stabilization Board shall have the power to determine, to arbitrate and to set rent levels, whether through general or individual adjustments, of any unit which has controlled rents under any Berkeley Ordinance, and to administer any Berkeley program which regulates rents and evictions.
The board shall have the following powers AND duties:
11. Establish rules and regulations for settling civil claims under Section 13.76.150.
12. Seek injunctive relief under Section 13.76.150.
13. Pursue civil remedies in courts of appropriate jurisdiction.
14. Intervene as an interested party in any litigation brought before a court of appropriate jurisdiction by a landlord or tenant with respect to rental units covered by this chapter."

I would appreciate a timely response to the Landlord in this matter who served me with a 3-Day Notice in retaliation for whistleblowing to the FTC, FBI and IRS.

Many thanks and best regards.

Helton Carvalho
2001 Allston Way, Berkeley, CA 94704
[redacted]

On Wed, Jan 31, 2024 at 5:19 PM Sandoval, Leticia <LSandoval@berkeleyca.gov> wrote:

> Helton Carvalho,
>
> I hope that this email finds you well.
>
> My name is Leticia Sandoval; I am one of the OS II at the City of Berkeley-Rent Stabilization Board. Upon looking at your appointment request, it appears that you've been working with my colleague, Carla Orozco.
> Therefore, I am connecting you two so you can ask Carla your questions.
>
> Best,
>
> **Leticia Sandoval | PIU**
> City of Berkeley Rent Stabilization Board
> 2125 Milvia St., Berkeley, CA 94704
> (510) 981-4916 | Remote Ext. 706

https://www.cityofberkeley.info/rent/

**The Berkeley City Council has placed end dates on the COVID-19 eviction moratorium. Check our COVID-19 web page for important information.**

The Rent Board's Customer Comment form can be found here. We very much appreciate your taking some time to fill it out as we're constantly seeking to improve services to the community.

# EXHIBIT L

Meet and confer correspondence of Michael A. Slater to Defendants' counsel concerning Defendants' May and June 2023 discovery responses

*Letters #2, #3 and #4, served 2023, identifying the missing video footage of the moment of the blow and stating that failure to preserve amounts to spoliation*

SLF

THE SLATER LAW FIRM, APC
1900 Avenue of The Stars, 17th Floor, Los Angeles, California 90067
Michael A. Slater, Esq. | mslater@theslaterlawfirmapc.com | (818) 697-3051

June 22, 2023

<u>**Via Email Only**</u>

Katherine Catlos, Esq.
Emmalee McCarthy, Esq.
KAUFMAN, DOLOWICH & VOLUCK, LLP
425 California Street, Suite 2100
San Francisco, California 94104
kcatlos@kdvlaw.com
emccarthy@kdvlaw.com

**Re:** **<u>M&C re Defendants' 5-12- / 6-20-23 Responses to Plaintiff's 3-10-23 Discovery</u>**
***Arnaud Cammas v. YMCA of the East Bay, et al.*** **| Case No. 22CV019990**

Dear Mmes. Catlos and McCarthy,

In accordance with Code of Civil Procedure ("CCP") section 2016.040, I am writing to meet and confer regarding Defendants Young Men's Christian Association of the East Bay, Lance Goree, Rose Acosta and Antonio Acosta's (collectively, "Defendants") May 12 and June 20, 2023 responses to Plaintiff Arnaud Cammas' ("Plaintiff") form interrogatories, special interrogatories, requests for production of documents and requests for admissions, sets one (collectively, "Initial Discovery"), in the above-referenced matter. I am also writing to respond to the contentions raised in your June 20, 2023 meet and confer letter regarding Defendants' responses to Initial Discovery ("6-20-23 Letter").

So that it is clear which issues raised in my May 12, 2023 meet and confer letter ("5-12-23 Letter") have been resolved or remain in dispute, I have kept the original headings of my 5-12-23 Letter.

## I. <u>General Objections</u>

In the 6-20-23 Letter, Defendants dispute Plaintiff's contention that Defendants' "General Objections" are ineffective. Defendants indicate that "the general objections are intended only to preserve and protect all rights and defenses available to Defendants as a supplement to the individualized objections." Defendants' intended use of their General Objections would render Defendants' specific objections to specific discovery requests meaningless. I have identified no legal authority that supports Defendants' position, as I understand it, that a party may assert primary and alternative objections to discovery in the event their primary objections are ineffective

/ overruled. How can Plaintiff—or, if necessitated, the Court—be expected to evaluate the merits of Defendants' objections if it is unclear which objections are being asserted – primary, alternative, supplemental or otherwise?

If Defendants intend to have all General Objections apply to all form interrogatories and requests for production of documents, Defendants should amend their responses to assert all General Objections in response to each and every discovery request. Still, I believe asserting objections in such a boilerplate manner would contravene the CCP, which requires that objections to discovery be made with specificity. *See* CCP, § 2030.300, subd. (a)(3) ["An objection to an interrogatory is without merit or too general."]; *see also* CCP, § 2031.310, subd. (a)(3) [same principle with respect to requests for production]; *see also* CCP, § 2033.290, subd. (a)(2) [same principle with respect to requests for admission]. Defendants' assertion of "General Objections" as an alternative or "supplement" to other objections would run afoul the CCP's specificity requirements.

As indicated in my 5-12-23 Letter, a party responding to discovery may object to specific discovery requests; however, a party respond to discovery is not permitted to make "general objections" to an entire set of discovery. *See* Korea Data Sys. Co. v. Superior Ct. (1997) 51 Cal. App. 4th 1513, 1516 [a motion to compel lies where objections are "too general"; objecting party subject to sanctions for "boiler plate" objections.]. As persuasive authority, federal courts in the Ninth Circuit follow a similar standard. *See*, *e.g.*, A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) [General blanket objections do not meet Rule 34's specificity requirements and are generally disregarded by federal courts.].

## II. Attorney-Client Privilege & Work-Product Doctrine Objections

I am in receipt of Defendants' "Privilege Log for Defendants' Combined Document Production, Bates Nos. 000001-000172" served June 20, 2023. (The "6-20-23 Privilege Log.")

With respect to Bates Nos. 80, Defendants have redacted certain portions of a November 25, 2022 email between Shavon Dorsey, Albert Chan, Kelley Maltais and Hae Won Rhow based upon their assertion of the attorney-client privilege. With respect to Bates Nos. 154, Defendants have redacted certain portions of a March 14, 2023 email between Rose Acosta, Kelley Maltais and Hae Won Rhow. However, the redacted portions of those email are not shielded from disclosure under the attorney-client privilege. This is because, under California law, the attorney-client privilege attaches only to confidential communications between a client and their attorney during the course of the attorney-client relationship—which is not the case here. Evid. Code § 952; Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 371; Southern Cal. Gas Co. v. Public Utilities Comm'n (1990) 50 Cal.3d 31, 37.

To the extent Defendants contend the November 25, 2022 and March 14, 2023 communications are confidential communications between YMCA and its attorneys, please advise.

## III. Defendants' Document Production & References Thereto

Defendants amended their responses to Initial Discovery to identify the documents responsive to each request for production by BATES range, in accordance with CCP § 2031.280. As a result, the dispute raised in my 5-12-23 Letter is resolved.

/ / /

## IV. Material Withheld?

In the 6-20-23 Letter, Defendants indicate that certain documents were withheld on privacy grounds and on relevancy grounds. Plaintiff is not inclined to litigate the issue to compel disclosure of any materials withheld unless those materials relate to any uses of force / injuries caused by Defendants Rose Acosta, Antonio Acosta and/or Lance Goree during their employment at the YMCA. Please confirm the materials withheld do not relate to any uses of force / injuries caused by Defendants Rose Acosta, Antonio Acosta and/or Lance Goree during their employment at the YMCA. Thank you.

## V. Defendants' Responses to Form Interrogatories

### A. Form Interrogatory 2.8

Resolved.

### B. Form Interrogatory 4.1

Resolved.

### C. Form Interrogatory 12.4

Resolved.

### D. Form Interrogatory 15.1 & 17.1

Resolved.

## VI. Defendants' Responses to Special Interrogatories

In the 6-20-23 Letter, separate and apart from their relevancy objections, Defendants indicate that Lance Goree need not respond to Special Interrogatories ("SPROG") 30 through 36—which ask Goree to identify the uses of force Goree contends Plaintiff employed against him, the uses of force Goree contends he employed against Plaintiff, as well as Plaintiff's levels of resistance and compliance during the subject incident—because the reasonableness standard at the heart of a self-defense affirmative defense is an objective one; therefore, Goree's subjective impressions are irrelevant. Defendants' point is well-taken. However, even if Goree's subjective impressions regarding the levels of force / resistance used by the Parties during the subject incident are not squarely relevant to Goree's self-defense affirmative defense, they remain relevant to Plaintiff's claims for battery, intentional infliction of emotional distress and false imprisonment.

## VII. Defendants' Responses to Requests for Production of Documents

Once the YMCA has completed its review for video footage—including for the missing video footage of the precise moment Goree punched Plaintiff in the face in the video produced as "YMCA ET AL 000170"—please advise.

In the 6-20-23 Letter, citing to Hernandez v. Garcetti (1998) 68 Cal.App.4th 675, 680-81, Defendants appear to take the position that spoliation of evidence can only occur when there is "pending" litigation. Defendants' interpretation of Hernandez is too narrow. While it is true that spoliation occurs when a party fails to preserve evidence during pending litigation, spoliation also occurs when "there is a failure to preserve property for another's use as evidence in current ***or future litigation***" that is reasonably foreseeable. Strong v. State of California (2011) 201 Cal. App. 4th 1439, 1458 (citing to Hernandez, 68 Cal.App.4th at 680) (emphasis added)).

Litigation is reasonably foreseeable when it is "probable" or "likely" to arise from a dispute or incident. Victor Valley Union High Sch. Dist. v. Superior Ct. of San Bernardino Cnty. (2023) 91 Cal. App. 5th 1121. Here, litigation was reasonable foreseeable. Indeed, it was the YMCA—not Plaintiff—that initiated litigation in the form of a petition for a workplace violence restraining order against Plaintiff ***before*** Plaintiff filed his lawsuit against the YMCA and the other Defendants. For the YMCA to claim litigation was not reasonably foreseeable, thereby triggering its duty to preserve relevant evidence, would be disingenuous. Why the YMCA preserved five videos of the subject incident, but may not have preserved video footage of the precise moment Goree punched Plaintiff in the face, remains unanswered but would appear to evidence intentional destruction of evidence.

Please confirm Defendants will not contest that Goree punched Plaintiff in the face in the seconds after the events captured in the video produced as "YMCA ET AL 000170." If Defendants intend to contest that fact, please be advised that Plaintiff intends to move for spoliation sanctions on account of the YMCA's failure to preserve video evidence of the precise moment Goree punched Plaintiff's face: including for an issue sanction ordering that Goree's punch to Plaintiff's face be established as true for purposes of this lawsuit and precluding Defendants from introducing opposing evidence as to that fact.

…

As you may recall, Defendants agreed that Plaintiff would have 60 days to file a motion to compel as to any disputes that arose from Defendants' responses to Plaintiff's Initial Discovery—which falls on July 11 as to Defendants' May 12 responses and on August 19 as to Defendants' June 12 first amended responses. In light of the foregoing, I would appreciate your response on or before June 28, 2023. If Defendants want more time beyond June 28 to respond to this letter and/or to serve second amended responses to Initial Discovery, that is fine so long as Defendants further extend Plaintiff's deadline to file a motion to compel. Please advise. Thank you.

Sincerely,

THE SLATER LAW FIRM, APC

MICHAEL A. SLATER

Michael A. Slater

THE SLATER LAW FIRM, APC
1900 Avenue of The Stars, 17th Floor, Los Angeles, California 90067
Michael A. Slater, Esq. | mslater@theslaterlawfirmapc.com | (818) 697-3051

July 6, 2023

**<u>Via Email Only</u>**

Katherine Catlos, Esq.
Emmalee McCarthy, Esq.
KAUFMAN, DOLOWICH & VOLUCK, LLP
425 California Street, Suite 2100
San Francisco, California 94104
kcatlos@kdvlaw.com
emccarthy@kdvlaw.com

**Re: <u>M&C re Defendants' 5-12- / 6-20-23 Responses to Plaintiff's 3-10-23 Discovery</u>**
***Arnaud Cammas v. YMCA of the East Bay, et al.* | Case No. 22CV019990**

Dear Mmes. Catlos and McCarthy,

In accordance with Code of Civil Procedure ("CCP") section 2016.040, I am writing to meet and confer for an additional time regarding Defendants Young Men's Christian Association of the East Bay, Lance Goree, Rose Acosta and Antonio Acosta's (collectively, "Defendants") May 12 and June 20, 2023 responses to Plaintiff Arnaud Cammas' ("Plaintiff") form interrogatories, special interrogatories, requests for production of documents and requests for admissions, sets one (collectively, "Initial Discovery"), in the above-referenced matter. I am also writing to respond to the contentions raised in your June 20 and July 5, 2023 meet and confer letter regarding Defendants' responses to Initial Discovery ("6-20-23 Letter" and 7-5-23 Letter," respectively).

So that it is clear which issues raised in my May 12 and June 22, 2023 meet and confer letters ("5-12-23 Letter" and "6-22-23 Letter") and have been resolved or remain in dispute, I have kept the original headings of my 5-12-23 Letter.

## I. <u>General Objections</u>

With respect to Defendants' General Objections, based on our extensive meet and confer efforts to date, the Parties are entrenched in their positions and, therefore, I believe the Parties have reached impasse with respect to this issue. I appreciate that you have indicated that no information or documents have been withheld based on the General Objections alone, thereby potentially mooting the issue and making these discussions more academic than anything else. Still, that the General Objections are being asserted "as a supplement to the individualized objections" keeps

them in play, engenders uncertainty and, therefore, violates the CCP's specificity requirements. *See* CCP, § 2030.300, subd. (a)(3); CCP, § 2031.310, subd. (a)(3); CCP, § 2033.290, subd. (a)(2); *see also* Korea Data Sys. Co. v. Superior Ct. (1997) 51 Cal. App. 4th 1513, 1516 [a motion to compel lies where objections are "too general"; objecting party subject to sanctions for "boiler plate" objections.]; A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) [General blanket objections do not meet Rule 34's specificity requirements and are generally disregarded by federal courts.].

As such, Plaintiff is evaluating and reserves his right to file a motion to compel as to this issue.

## II. Attorney-Client Privilege & Work-Product Doctrine Objections

In the 7-5-23 Letter, without citing to legal authority in support thereof, Defendants take the position that, even though the communications at Bates Nos. 80 and 154 are not communications between YMCA personnel and their attorneys, because these "intra-client communications" regarding matters were discussed / to be discussed with the YMCA's attorneys, they are shielded from disclosure under the attorney-client privilege. Plaintiff disagrees. What is required for the attorney-client privilege to apply is clear and, as explained in my previous Letters, not supported in this instance. Evid. Code § 952; Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 371; Southern Cal. Gas Co. v. Public Utilities Comm'n (1990) 50 Cal.3d 31, 37.

As such, Plaintiff intends to file a motion to compel as to this issue unless the YMCA agrees to serve unredacted versions of the communications at Bates Nos. 80 and 154 **by July 9**.

## III. Defendants' Document Production & References Thereto

Resolved.

## IV. Material Withheld?

Resolved.

## V. Defendants' Responses to Form Interrogatories

### A. Form Interrogatory 2.8

Resolved.

### B. Form Interrogatory 4.1

Resolved.

### C. Form Interrogatory 12.4

Resolved.

### D. Form Interrogatory 15.1 & 17.1

Resolved.

## VI. Defendants' Responses to Special Interrogatories

Resolved.

/ / /

## VII. Defendants' Responses to Requests for Production of Documents

Please advise when the YMCA has completed its review for video footage—including for the missing video footage of the precise moment Goree punched (or lunged at, or struck or however the Parties want to characterize it in these meet and confer efforts) Plaintiff in the face in the video produced as "YMCA ET AL 000170." It is Plaintiff's position that Plaintiff's deadline to file a motion to compel is extended until the YMCA has confirmed no additional video footage exists, including for all video footage of the subject incident. To the extent Defendants disagree, please advise **by July 9**.

Plaintiff contends that, with a closed fist, Defendant Goree threw a powerful, devastating jab punch directly into Plaintiff's face, causing Plaintiff to nearly lose consciousness and to nearly fall to the floor (FAC, ¶ 43)—and that said conduct was captured in the missing video footage. Plaintiff intends to move for issue sanctions establishing those facts as true for purposes of this lawsuit and precluding Defendants from introducing opposing evidence as to those facts – though that spoliation sanctions motion need to not occur in connection with any motion to compel, nor is it governed by CCP 2030.300's time limitations.

…

As you may recall, Defendants agreed that Plaintiff would have 60 days to file a motion to compel as to any disputes that arose from Defendants' responses to Plaintiff's Initial Discovery—which falls on July 11 as to Defendants' May 12 responses and on August 19 as to Defendants' June 12 first amended responses. No additional amended discovery responses have been served since our most recent meet and confer letter exchange. If Defendants want to continue meeting and conferring over any of the issues that remain disputed regarding responses to Initial Discovery and subject to Plaintiff's contemplated motion to compel, Plaintiff is amenable to doing so, so long as Plaintiff's deadline to file a motion to compel is similarly extended. Mindful of Plaintiff's July 11 / August 19 deadlines to file motions to compel, please advise if Defendants will be requesting additional time **by July 9**.

Thank you for your prompt attention to these matters.

Sincerely,

THE SLATER LAW FIRM, APC

MICHAEL A. SLATER

Michael A. Slater

SLF

**THE SLATER LAW FIRM, APC**
1900 Avenue of The Stars, 17th Floor, Los Angeles, California 90067
Michael A. Slater, Esq. | mslater@theslaterlawfirmapc.com | (818) 697-3051

July 21, 2023

**VIA EMAIL ONLY**

Katherine Catlos, Esq.
Emmalee McCarthy, Esq.
KAUFMAN, DOLOWICH & VOLUCK, LLP
425 California Street, Suite 2100
San Francisco, California 94104
kcatlos@kdvlaw.com
emccarthy@kdvlaw.com

**Re: M&C re Defendants' 5-12- / 6-20-23 Responses to Plaintiff's 3-10-23 Discovery**
***Arnaud Cammas v. YMCA of the East Bay, et al.* | Case No. 22CV019990**

Dear Mmes. Catlos and McCarthy,

In accordance with Code of Civil Procedure ("CCP") section 2016.040, I am writing to meet and confer for a fourth time regarding Defendants Young Men's Christian Association of the East Bay, Lance Goree, Rose Acosta and Antonio Acosta's (collectively, "Defendants") May 12 and June 20, 2023 responses to Plaintiff Arnaud Cammas' ("Plaintiff") form interrogatories, special interrogatories, requests for production of documents and requests for admissions, sets one (collectively, "Initial Discovery"), in the above-referenced matter. I am also writing to respond to the contentions raised in your June 20, July 5, and July 20, 2023 meet and confer letter regarding Defendants' responses to Initial Discovery.

So that it is clear which issues have been resolved or remain in dispute, I have kept the original headings of my May 12, 2023 Letter.

## I. General Objections

Please serve amended responses with the General Objections removed. Once that is done, I will understand this dispute to be resolved. Thank you.

## II. Attorney-Client Privilege & Work-Product Doctrine Objections

Your point that anyone who brings an unsuccessful motion to compel may be sanctioned by the Court is well-taken. But the same is true for those who unsuccessfully oppose a motion to compel. For the reasons articulated in my previous Letters, I am confident the law is on Plaintiff's side with respect to the redactions contained in Bates Nos. 80 and 154.

Defendants indicate, for the first time in your 7-20-23 Letter, that the top of Bates No. 80 was redacted because it is a direct email between your office and the YMCA. From what I can tell, the top-of-the-redaction you are identifying were completely whited out (unlike the other redactions we have been conferring over, which were blacked out), making it impossible for Plaintiff to know the top-of-the-page redactions were even made, until now. I presume from my own experience that the top-of-the-page whited out redactions are correspondence from the YMCA forwarding your office an email thread of which you were not previously a part. Please confirm. If so, I do not dispute that the whited out redacted portion of the email thread is protected by the attorney-client privilege and will understand that portion of this issue to be resolved.

However, as for the blacked-out redactions about which we have been conferring, the fact that the blacked-out redactions were part of an email thread eventually forwarded to your office does not make them attorney-client privileged communications. It is not difficult to imagine how that logic could be abused by a party that wants to shield certain information from coming to light in discovery. Under California law, the attorney-client privilege attaches only to confidential communications between a client and their attorney during the course of the attorney-client relationship. Evid. Code § 952; Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 371; Southern Cal. Gas Co. v. Public Utilities Comm'n (1990) 50 Cal.3d 31, 37. For reasons articulated in my previous Letters, such is not the case with respect to the correspondence that contain the blacked-out redactions.

Next, Defendants argue, for the first time in your 7-20-23 letter, "even if the Court finds that these matters are not true attorney-client communications," that Plaintiff's contemplated motion to compel unredacted correspondence "would still fail" because the blacked-out redactions were applied to portions of the correspondence that Defendants contend are irrelevant to Plaintiff's claims. I disagree.

Redaction is an inappropriate tool for excluding allegedly irrelevant information from documents that are otherwise responsive to a discovery request. As stated succinctly in Francisco v. Emeritus Corp., 2017 WL 11036693, at *5–6 (C.D. Cal. 2017):

> It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information. Thus, courts view 'documents as relevant or irrelevant; courts do not, as a matter of practice, weigh the relevance of particular pictures, graphics, paragraphs, sentences, or words, except to the extent that if one part of a document is relevant then the entire document is relevant… .

(Quoting Bartholomew v. Avalon Capital Grp., Inc., 278 F.R.D. 441 (D. Minn. 2011)).

While it is true that California Rules of Court ("CRC") 1.201 and 8.83 permit redactions of things like social security numbers, financial account numbers and driver's license numbers, other than those narrow carve-outs, I have identified no legal authority, in the CRC, the California Rules of Civil Procedure or otherwise that grant parties the power to unilaterally redact information on the basis of relevance.

It is not difficult to imagine the consequences of permitting parties to unilaterally redact portions of documents for purported lack of relevancy. *See* In re State St. Bank & Trust Co. Fixed

Income Funds Inv. Litig., 2009 WL 1026013, at *1 (S.D. N.Y. 2009) ("[Unilateral] redactions are generally unwise. They breed suspicions, and they may deprive the reader of context."]; In re Medeva Securities Litigation, 1995 WL 943468, at *3 (C.D. Cal. 1995) ["The Court does not welcome unilateral editing of documents by the producing party. Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured."]; U.S. Equal Employment Opportunity Comm'n v. Dolgencorp, LLC, 2015 WL 2148394, at *2 (N.D. Ill. 2015) [ordering production of unredacted operations manual and noting that "redaction of otherwise discoverable documents is the exception rather than the rule"].

This is the fourth letter I have prepared in connection with these discovery disputes. I believe Plaintiff has more than satisfied his obligation under CCP 2016.040 to meet and confer to narrow or resolve this issue before filing a motion to compel. As such, Plaintiff intends to file a motion to compel as to this issue unless the YMCA agrees to serve unredacted versions of the communications at Bates Nos. 80 and 154 **by July 25**.

## III. Defendants' Document Production & References Thereto

Resolved.

## IV. Material Withheld?

Resolved.

## V. Defendants' Responses to Form Interrogatories

### A. Form Interrogatory 2.8

Resolved.

### B. Form Interrogatory 4.1

Resolved.

### C. Form Interrogatory 12.4

Resolved.

### D. Form Interrogatory 15.1 & 17.1

Resolved.

## VI. Defendants' Responses to Special Interrogatories

Resolved.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## VII. Defendants' Responses to Requests for Production of Documents

Respectfully, what makes Plaintiff's contention that, "with a closed left fist Defendant Goree threw a powerful, devastating jab punch directly into Plaintiff's face—causing Plaintiff to nearly lose consciousness and to nearly fall to the floor" as you put it – "impossible to prove" – is the fact that the YMCA failed to preserve video footage of precisely the moment the foregoing occurred. As indicated in my previous Letters, failure to preserve evidence amounts to spoliation. The remainder of the arguments in your 7-20-23 Letter regarding the vehicle for bringing this to the Court's attention, or how the remedy is characterized, are inapposite. Plaintiff will seek judicial relief for the issue sanction to which he believes he is entitled. And he need not do so in connection with any forthcoming motion to compel.

Thank you for your prompt attention to these matters.

Sincerely,

THE SLATER LAW FIRM, APC

MICHAEL A. SLATER

Michael A. Slater

# EXHIBIT M

Plaintiff's Requests for Production of Documents, Set One,
to YMCA of the East Bay, propounded March 10, 2023

*Includes Requests Nos. 17-40 (uses of force), 53-55 (written complaints) and 63-66 (video and audio footage)*

Michael A. Slater, Esq. (SBN 318899)
**THE SLATER LAW FIRM, APC**
515 South Flower Street, 18th Floor
Los Angeles, California 90071
E-mail: mslater@theslaterlawfirmapc.com
Tel: (818) 645-4406

Attorneys for Plaintiff, ARNAUD CAMMAS

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

ARNAUD CAMMAS, an individual;

Plaintiff,

vs.

YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY, a California nonprofit public benefit corporation; LANCE GOREE, an individual; ROSE ACOSTA, an individual; ANTONIO ACOSTA, an individual; and DOES 1 through 25, inclusive.

Defendants.

Case No.: 22CV019990

**PLAINTIFF ARNAUD CAMMAS'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE, TO DEFENDANT YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE EAST BAY**

**PROPOUNDING PARTY:** Plaintiff Arnaud Cammas

**RESPONDING PARTY:** Defendant YMCA of the East Bay

**SET NUMBER:** ONE (1)

Plaintiff Arnaud Cammas hereby requests that Defendant Young Men's Christian Association of the East Bay answer the following set of Requests for Production of Documents, in writing and under oath, pursuant to California Code of Civil Procedure section 2031.260, and that said answers be signed, verified and served within thirty (30) days after service.

/ / /

**DEFINITIONS**

A. **YOU** and **YOUR / YMCA** Defendant Young Men's Christian Association of the East Bay, their agents or anyone acting on their behalf.

B. **PLAINTIFF** means Plaintiff Arnaud Cammas, their agents or anyone acting on their behalf.

C. **VERONICA** means Veronica Estudillo, their agents or anyone else acting on their behalf.

D. **ROSE** means Defendant Rose Acosta, their agents or anyone acting on their behalf.

E. **ANTONIO** means Defendant Antonio Acosta, their agents or anyone acting on their behalf.

F. **LANCE** means Defendant Lance Goree, their agents or anyone else acting on their behalf.

G. **DBA** means the Downtown Berkeley Association, its agents or anyone acting on its behalf—including, but not limited to, its teams / subdivisions, such as the "Cleaning and Hospitality Ambassador Team."

H. **BPD** means the Berkeley Police Department, its agents or anyone acting on its behalf.

I. **PERSONS** means and includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation or public entity.

J. **HEALTH CARE PROVIDERS** means and includes any PERSONS referred to in California Code of Civil Procedure section 667.7, subdivision (e)(3), and includes PERSONS who provide mental health care services.

K. **INITIAL ENCOUNTER** refers to the events that occurred at approximately 1:30 p.m. on February 4, 2022 at the YMCA RESIDENCE between at least the following individuals—PLAINITFF, VERONICA, ROSE, ANTONIO—as described in Paragraphs 12 through 16 of the First Amended Complaint filed November 15, 2022.

L. **SUBJECT INCIDENT** refers to the events that occurred after the INITIAL ENCOUNTER at the YMCA RESIDENCE between at least the following individuals—PLAINITFF, VERONICA, ROSE, ANTONIO and YOU—as described in Paragraphs 22 through

61 of the First Amended Complaint filed November 15, 2022.

M. **USES OF FORCE** means any physical effort to control, restrain, injure, impair, overcome and/or defend against a subject opponent. USES OF FORCE includes codified and non-codified systems of combat, including, but not limited to: martial arts, grappling, wrestling, jiu jitsu, boxing, body-control maneuvers, takedown maneuvers and CHOKEHOLDS.

N. **CHOKEHOLDS** means a general term for grappling holds that critically reduce or prevent either air or blood from passing through the neck of a subject opponent—including, but not limited to: VASCULAR NECK RESTRAINT and AIRWAY CHOKE.

O. **VASCULAR NECK RESTRAINT** refers to the chokehold technique whereby pressure is applied to both sides of an individual's neck intended to cause loss of consciousness from decreased cerebral blood flow from carotid artery compression. VASCULAR NECK RESTRAINT is sometimes referred to as a "carotid chokehold."

P. **AIRWAY CHOKE** refers to the chokehold technique whereby pressure is applied to the upper airway (trachea, larynx or laryngopharynx), hence interfering with breathing and can lead to unconsciousness and/or asphyxia.

Q. **INJURY** means any physical injury which requires professional medical treatment—as defined in California Penal Code section 243, subdivision (f)(5).

R. **SERIOUS BODILY INJURY** means a serious impairment of physical condition—including, but not limited to: loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing and serious disfigurement—as defined in California Penal Code section 243, subdivision (f)(4).

S. **COMMUNICATIONS** means any disclosure, transfer, or exchange of information or opinion, however made—and includes COMMUNICATIONS sent by the subject and received from other PERSONS by the subject.

T. **DOCUMENTS** means a writing, as defined in California Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stores information, and every other means of recording upon any tangible thing and form of COMMUNICATION or representation, including letters, words,

THE SLATER LAW FIRM APC
515 S. Flower St., 18th Fl
Los Angeles, CA 90071

pictures, sounds or symbols, or combinations of them.

U. **YMCA EMPLOYMENT RECORDS** means application / resume submitted to the YMCA when the subject applied for employment at the YMCA; employment contracts / agreements; written job descriptions; disciplinary records; performance reviews (annual, bi-annual, etc.) and DOCUMENTS reflecting ADVERSE EMPLOYMENT ACTION taken by the YMCA.

V. **TERMINATION** means the actual or constructive termination of employment and includes a discharge, firing, layoff, resignation or completion of the terms of the employment agreement.

W. **ADVERSE EMPLOYMENT ACTION** means TERMINATION, suspension, demotion, reprimand, loss of pay, failure or refusal to hire or failure or refusal to promote.

X. **LAWSUIT** means the above-captioned matter entitled Arnaud Cammas v. Young Men's Christian Association of the East Bay, et al. (Alameda County Superior Court case no. 22CV019990.)

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

Please produce all **YOUR COMMUNICATIONS** with **LANCE** in which the **SUBJECT INCIDENT** is described or discussed.

**REQUEST FOR PRODUCTION NO. 2:**

Please produce all **YOUR COMMUNICATIONS** with **LANCE** in which the **INITIAL ENCOUNTER** is described or discussed.

**REQUEST FOR PRODUCTION NO. 3:**

Please produce all **YOUR COMMUNICATIONS** with **LANCE** in which this **LAWSUIT** is described or discussed.

**REQUEST FOR PRODUCTION NO. 4:**

Please produce all **YOUR COMMUNICATIONS** with **LANCE** in which **PLAINTIFF** is described or discussed.

**REQUEST FOR PRODUCTION NO. 5:**

Please produce all **YOUR COMMUNICATIONS** with **ROSE** in which the **SUBJECT**

**INCIDENT** is described or discussed.

**REQUEST FOR PRODUCTION NO. 6:**

Please produce all **YOUR COMMUNICATIONS** with **ROSE** in which the **INITIAL ENCOUNTER** is described or discussed.

**REQUEST FOR PRODUCTION NO. 7:**

Please produce all **YOUR COMMUNICATIONS** with **ROSE** in which this **LAWSUIT** is described or discussed.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce all **YOUR COMMUNICATIONS** with **ROSE** in which **PLAINTIFF** is described or discussed.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all **YOUR COMMUNICATIONS** with **ANTONIO** in which the **SUBJECT INCIDENT** is described or discussed.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all **YOUR COMMUNICATIONS** with **ANTONIO** in which the **INITIAL ENCOUNTER** is described or discussed.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all **YOUR COMMUNICATIONS** with **ANTONIO** in which this **LAWSUIT** is described or discussed.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce all **YOUR COMMUNICATIONS** with **ANTONIO** in which **PLAINTIFF** is described or discussed.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all **YOUR COMMUNICATIONS** with any **PERSON** (other than **LANCE**, **ROSE**, and **ANTONIO**) in which the **INITIAL ENCOUNTER** is described or discussed.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all **YOUR COMMUNICATIONS** with any **PERSON** (other than

**LANCE**, **ROSE**, and **ANTONIO**) in which the **SUBJECT INCIDENT** is described or discussed.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all **YOUR COMMUNICATIONS** with any **PERSON** (other than **LANCE**, **ROSE**, and **ANTONIO**) in which the **PLAINTIFF** is described or discussed.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all **YOUR COMMUNICATIONS** with **BPD** from 2013 to the present.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all **DOCUMENTS** in which any **USES OF FORCE LANCE** employed against any **PERSON** from 2003 to 2013 (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all **DOCUMENTS** in which any **USES OF FORCE LANCE** employed against any **PERSON** from 2013 to the present (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all **YOUR COMMUNICATIONS** in which any **USES OF FORCE LANCE** employed against any **PERSON** from 2003 to 2013 (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 20:**

Please produce all **YOUR COMMUNICATIONS** in which any **USES OF FORCE LANCE** employed against any **PERSON** from 2013 to the present (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 21:**

Please produce all **DOCUMENTS** in which any **USES OF FORCE ROSE** employed against any **PERSON** from 2003 to 2013 (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 22:**

Please produce all **DOCUMENTS** in which any **USES OF FORCE ROSE** employed

against any **PERSON** from 2013 to the present (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 23:**

Please produce all **YOUR COMMUNICATIONS** in which any **USES OF FORCE ROSE** employed against any **PERSON** from 2003 to 2013 (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 24:**

Please produce all **YOUR COMMUNICATIONS** in which any **USES OF FORCE ROSE** employed against any **PERSON** from 2013 to the present (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 25:**

Please produce all **DOCUMENTS** in which any **USES OF FORCE ANTONIO** employed against any **PERSON** from 2003 to 2013 (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 26:**

Please produce all **DOCUMENTS** in which any **USES OF FORCE ANTONIO** employed against any **PERSON** from 2013 to the present (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 27:**

Please produce all **YOUR COMMUNICATIONS** in which any **USES OF FORCE ANTONIO** employed against any **PERSON** from 2003 to 2013 (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 28:**

Please produce all **YOUR COMMUNICATIONS** in which any **USES OF FORCE ANTONIO** employed against any **PERSON** from 2013 to the present (other than in connection with informal or formal training contexts) are described or discussed.

**REQUEST FOR PRODUCTION NO. 29:**

Please produce all **DOCUMENTS** in which any **INJURY** and/or **SERIOUS BODILY**

**INJURY LANCE** caused to any **PERSON** from 2003 to 2013 is described or discussed.

**REQUEST FOR PRODUCTION NO. 30:**

Please produce all **DOCUMENTS** in which any **INJURY** and/or **SERIOUS BODILY INJURY LANCE** caused to any **PERSON** from 2013 to the present is described or discussed.

**REQUEST FOR PRODUCTION NO. 31:**

Please produce all **YOUR COMMUNICATIONS** in which any **INJURY** and/or **SERIOUS BODILY INJURY LANCE** caused to any **PERSON** from 2003 to 2013 is described or discussed.

**REQUEST FOR PRODUCTION NO. 32:**

Please produce all **YOUR COMMUNICATIONS** in which any **INJURY** and/or **SERIOUS BODILY INJURY LANCE** caused to any **PERSON** from 2013 to the present is described or discussed.

**REQUEST FOR PRODUCTION NO. 33:**

Please produce all **DOCUMENTS** in which any **INJURY** and/or **SERIOUS BODILY INJURY ROSE** caused to any **PERSON** from 2003 to 2013 is described or discussed.

**REQUEST FOR PRODUCTION NO. 34:**

Please produce all **DOCUMENTS** in which any **INJURY** and/or **SERIOUS BODILY INJURY ROSE** caused to any **PERSON** from 2013 to the present is described or discussed.

**REQUEST FOR PRODUCTION NO. 35:**

Please produce all **YOUR COMMUNICATIONS** in which any **INJURY** and/or **SERIOUS BODILY INJURY ROSE** caused to any **PERSON** from 2003 to 2013 is described or discussed.

**REQUEST FOR PRODUCTION NO. 36:**

Please produce all **YOUR COMMUNICATIONS** in which any **INJURY** and/or **SERIOUS BODILY INJURY ROSE** caused to any **PERSON** from 2013 to the present is described or discussed.

**REQUEST FOR PRODUCTION NO. 37:**

Please produce all **DOCUMENTS** in which any **INJURY** and/or **SERIOUS BODILY**

THE SLATER LAW FIRM APC
515 S. Flower St., 18th Fl
Los Angeles, CA 90071

**INJURY ANTONIO** caused to any **PERSON** from 2003 to 2013 is described or discussed.

**<u>REQUEST FOR PRODUCTION NO. 38:</u>**

Please produce all **DOCUMENTS** in which any **INJURY** and/or **SERIOUS BODILY INJURY ANTONIO** caused to any **PERSON** from 2013 to the present is described or discussed.

**<u>REQUEST FOR PRODUCTION NO. 39:</u>**

Please produce all **YOUR COMMUNICATIONS** in which any **INJURY** and/or **SERIOUS BODILY INJURY ANTONIO** caused to any **PERSON** from 2003 to 2013 is described or discussed.

**<u>REQUEST FOR PRODUCTION NO. 40:</u>**

Please produce all **YOUR COMMUNICATIONS** in which any **INJURY** and/or **SERIOUS BODILY INJURY ANTONIO** caused to any **PERSON** from 2013 to the present is described or discussed.

**<u>REQUEST FOR PRODUCTION NO. 41:</u>**

Please produce all **DOCUMENTS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **LANCE** from 2003 to 2013 are described or discussed.

**<u>REQUEST FOR PRODUCTION NO. 42:</u>**

Please produce all **DOCUMENTS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **LANCE** from 2013 to the present are described or discussed.

**<u>REQUEST FOR PRODUCTION NO. 43:</u>**

Please produce all **YOUR COMMUNICATIONS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **LANCE** from 2003 to 2013 are described or discussed.

**<u>REQUEST FOR PRODUCTION NO. 44:</u>**

Please produce all **YOUR COMMUNICATIONS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **LANCE** from 2013 to the present are described or discussed.

**<u>REQUEST FOR PRODUCTION NO. 45:</u>**

Please produce all **DOCUMENTS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **ROSE** from 2003 to 2013 are described or discussed.

THE SLATER LAW FIRM APC
515 S. FLOWER ST., 18TH FL
LOS ANGELES, CA 90071

**REQUEST FOR PRODUCTION NO. 46:**

Please produce all **DOCUMENTS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **ROSE** from 2013 to the present are described or discussed.

**REQUEST FOR PRODUCTION NO. 47:**

Please produce all **YOUR COMMUNICATIONS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **ROSE** from 2003 to 2013 are described or discussed.

**REQUEST FOR PRODUCTION NO. 48:**

Please produce all **YOUR COMMUNICATIONS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **ROSE** from 2013 to the present are described or discussed.

**REQUEST FOR PRODUCTION NO. 49:**

Please produce all **DOCUMENTS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **ANTONIO** from 2003 to 2013 are described or discussed.

**REQUEST FOR PRODUCTION NO. 50:**

Please produce all **DOCUMENTS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **ANTONIO** from 2013 to the present are described or discussed.

**REQUEST FOR PRODUCTION NO. 51:**

Please produce all **YOUR COMMUNICATIONS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **ANTONIO** from 2003 to 2013 are described or discussed.

**REQUEST FOR PRODUCTION NO. 52:**

Please produce all **YOUR COMMUNICATIONS** in which any **ADVERSE EMPLOYMENT ACTION** taken against **ANTONIO** from 2013 to the present are described or discussed.

**REQUEST FOR PRODUCTION NO. 53:**

Please produce any written complaints made about **LANCE** and/or **LANCE's** performance at the **YMCA** during **LANCE's** employment at the **YMCA**—including, but not limited to: form complaints, email complaints and handwritten complaints.

**REQUEST FOR PRODUCTION NO. 54:**

Please produce any written complaints made about **ROSE** and/or **ROSE's** performance at the **YMCA** during **ROSE's** employment at the **YMCA**—including, but not limited to: form complaints, email complaints and handwritten complaints.

**REQUEST FOR PRODUCTION NO. 55:**

Please produce any written complaints made about **ANTONIO** and/or **ANTONIO's** performance at the **YMCA** during **ANTONIO's** employment at the **YMCA**—including, but not limited to: form complaints, email complaints and handwritten complaints.

**REQUEST FOR PRODUCTION NO. 56:**

Please produce all **DOCUMENTS** in which all formal and informal **USES OF FORCE** training(s) **LANCE** has had are described or discussed—both through / at the **YMCA** and otherwise.

**REQUEST FOR PRODUCTION NO. 57:**

Please produce all **DOCUMENTS** in which all formal and informal **USES OF FORCE** training(s) **ROSE** has had are described or discussed—both through / at the **YMCA** and otherwise.

**REQUEST FOR PRODUCTION NO. 58:**

Please produce all **DOCUMENTS** in which all formal and informal **USES OF FORCE** training(s) **ANTONIO** has had are described or discussed—both through / at the **YMCA** and otherwise.

**REQUEST FOR PRODUCTION NO. 59:**

Please produce **LANCE's YMCA EMPLOYMENT RECORDS**.

**REQUEST FOR PRODUCTION NO. 60:**

Please produce **ROSE's YMCA EMPLOYMENT RECORDS**.

**REQUEST FOR PRODUCTION NO. 61:**

Please produce **ANTONIO's YMCA EMPLOYMENT RECORDS**.

**REQUEST FOR PRODUCTION NO. 62:**

Please produce any insurance policy—including but not limited to the insurance policy's declarations page—through which **YMCA**, **LANCE**, **ROSE** and/or **ANTONIO** might be insured

THE SLATER LAW FIRM APC
515 S. Flower St., 18th Fl
Los Angeles, CA 90071

in any manner for the claims and damages that have arisen out of the **INITIAL ENCOUNTER**, the **SUBJECT INCIDENT** and/or this **LAWSUIT**.

**<u>REQUEST FOR PRODUCTION NO. 63:</u>**

Please produce all video and audio footage of the **INITIAL ENCOUNTER**—including five minutes before and five minutes after the **INITIAL ENCOUNTER**.

**<u>REQUEST FOR PRODUCTION NO. 64:</u>**

Please produce all video and audio footage of the **SUBJECT INCIDENT**—including five minutes before and after the **SUBJECT INCIDENT**.

**<u>REQUEST FOR PRODUCTION NO. 65:</u>**

Please produce all video and audio footage of **PLAINTIFF** on February 4, 2022—including, but not limited to, video footage of **PLAINTIFF** being escorted outside the **YMCA** building by **BPD** and evaluated by medical personnel.

**<u>REQUEST FOR PRODUCTION NO. 66:</u>**

Please produce all video and audio footage of **BPD** on February 4, 2022—including, but not limited to, video footage of **BPD** arriving at the **YMCA** building and **BPD** escorting **PLAINTIFF** out of the **YMCA** building where **PLAINTIFF** was evaluated by medical personnel.

**<u>REQUEST FOR PRODUCTION NO. 67:</u>**

Please produce all **DOCUMENTS** identified in **YOUR** responses to **PLAINTIFF's** Form Interrogatories, Set One.

**<u>REQUEST FOR PRODUCTION NO. 68:</u>**

Please produce all **DOCUMENTS** identified in **YOUR** responses to **PLAINTIFF's** Special Interrogatories, Set One.

Dated: March 10, 2023

**THE SLATER LAW FIRM, APC**

By: ***/s/ Michael A. Slater***
Michael A. Slater
Counsel for Plaintiff,
ARNAUD CAMMAS